1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| J.G.C. and J.N.C., by and through their parents and legal guardians, PAUL Y. CHUNG and IRIS J. CHUNG, | Civil Action No. _____ |
| *Plaintiffs,* | **COMPLAINT** |
| v. | |
| WASHINGTON INTERSCHOLASTIC ACTIVITIES ASSOCIATION, | JURY DEMANDED |
| *Defendant.* | |

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

## NATURE OF THE ACTION

1.  This dispute arises from religious discrimination by the Washington Interscholastic Activities Association (WIAA) against students J.G.C. and J.N.C. in refusing to accommodate their religious beliefs in its scheduling of state high-school tennis championship tournaments, even though it grants other analogous accommodations.

2.  J.G.C. and J.N.C. are Seventh-day Adventists whose religious beliefs prohibit them from playing tennis on the Sabbath—a day of rest and worship they observe every week between sundown Friday and sundown Saturday.

3.  WIAA is the organization authorized under Washington law to schedule and oversee interscholastic sports and activities within the State of Washington.

4.  Although WIAA schedules no state championship tournament play on Sundays, and although it schedules many other state championships to take place entirely during the week, WIAA typically schedules the 2A boys' and girls' state tennis championship tournaments to conclude on a Saturday. As a result, Saturday Sabbath observers like J.G.C. and J.N.C. are prohibited from completing the state championship tournament, solely on account of their religious beliefs.

5.  But this is not just a case of state actors failing to accommodate easily accommodatable religious exercise when it conflicts with state requirements—though it is certainly that. Rather this is also a case of a state actor taking a purely hypothetical conflict and using it to prohibit religious believers from participating fully in state high-school athletics even when there is no conflict at all.

6.  Specifically, WIAA has interpreted its rules to prohibit players, on pain of penalty, from participating in *any* postseason competition if they are, or know they might be, unable to proceed through the "completion of the championship event." This means that if the final day of the state championship tournament is scheduled on a Saturday, then a Seventh-day Adventist is prohibited from competing on every other day of postseason play as well—even though the postseason consists of multiple levels

Compl. – 1

of separate tournaments spanning weeks, and even though only a handful of players advance far enough to play on the last day.

7.   Further, although WIAA has interpreted its rules to prohibit religiously motivated withdrawals from postseason play, the rules expressly allow withdrawals for the secular reasons of "injury, illness or unforeseen events"—withdrawals that have the same effect on competition as a withdrawal to observe the Sabbath.

8.   Nonetheless, WIAA has refused to extend an accommodation to Sabbath observers, putting them to a stark choice: The only way they can participate in any postseason play at all is by abandoning their religious beliefs and agreeing in advance to violate the Sabbath in the event of a conflict.

9.   These actions have caused real harm. Last academic year, J.G.C. went undefeated in the regular season, but had to sit out of all postseason play after WIAA denied her family's request for an accommodation. Only the last day of postseason play would have conflicted with the Sabbath.

10. This year, her brother J.N.C. faces the same dilemma. WIAA has already scheduled the boys' state championship tournament to again include Saturday play. Thus, without this Court's intervention, J.N.C. will be disqualified from the outset from participating in postseason competition, even if he would face an actual conflict between competition and Sabbath only if he advanced to the final day of the state championship tournament.

11. WIAA's failure to accommodate and its discrimination against J.G.C.'s and J.N.C.'s religious exercise is unconstitutional, illegal, and must be enjoined. J.G.C. and J.N.C. are entitled to declaratory and injunctive relief, and J.G.C. is entitled to nominal and compensatory damages.

## JURISDICTION AND VENUE

12. This action arises under the Constitution and laws of the United States. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

Compl. – 2

13. This Court has personal jurisdiction over WIAA because this case arose from WIAA's actions in Lewis County, Washington, and because WIAA is incorporated and maintains its principal place of business in Renton, Washington.

14. The Court has authority to issue the declaratory and injunctive relief sought under 28 U.S.C. §§ 2201 and 2202.

15. Venue lies in this district under 28 U.S.C. §§ 1391(b)(1) and (2).

16. The events giving rise to Plaintiffs' claims occurred in Lewis County, Washington. J.G.C. and J.N.C. reside in Chehalis, Washington, played tennis for William F. West High School (W.F. West) in Chehalis, and were forced to remain in Chehalis rather than participate in postseason tennis play because of WIAA's actions.

## IDENTIFICATION OF PARTIES

17. J.G.C. is a seventeen-year-old girl and a recent high-school graduate. Her parents, Paul and Iris Chung, act as her representatives in bringing this lawsuit on her behalf.

18. J.N.C. is a fifteen-year-old boy and a rising high-school sophomore. His parents, Paul and Iris Chung, act as his representatives in bringing this lawsuit on his behalf.

19. J.G.C. played on the W.F. West girls' tennis team for all four years of high school, from 2015–19. J.N.C. also attends W.F. West, and is a member of the boys' tennis team.

20. J.G.C. and J.N.C. are devout Seventh-day Adventists. Their religion is a defining aspect of who they are.

21. Defendant WIAA is an organization authorized under Washington law to "control, supervise and regulate … interscholastic activities" in the State of Washington. Wash. Rev. Code § 28A.600.200.

Compl. – 3

22. WIAA comprises nearly 800 public and private schools in Washington and governs and oversees their interscholastic athletic activities. According to WIAA, its "programs provide students with valuable life skills and are an integral part of the total education process." WIAA, *About Us*, http://bit.ly/2LSD3z8.

23. WIAA's policies and scheduling decisions are state action subject to the Fourteenth Amendment of the United States Constitution and actions taken under color of state law within the meaning of 42 U.S.C. § 1983. See *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001).

## FACTUAL ALLEGATIONS

*J.G.C. and J.N.C.'s Religious Beliefs and Practices*

24. J.G.C. and J.N.C. are baptized members of the Seventh-day Adventist Church and actively attend the Chehalis Seventh-day Adventist Church in Chehalis, Washington.

25. J.G.C. and J.N.C. were baptized when they were eleven and twelve years old, respectively. Being baptized was a personal choice made after each of them individually felt ready to take on the Seventh-day Adventist faith and practices as their own.

26. The Seventh-day Adventist Church is a Protestant Christian denomination with more than 21 million members and a presence in over 200 countries. *A Message to the Seventh-day Adventist Church from the President*, Seventh-day Adventist Church (Apr. 4, 2019), http://bit.ly/2K6dsAL.

27. A central tenet of the Seventh-day Adventist faith is observance of the Sabbath from sundown Friday to sundown Saturday. The Sabbath is "God's perpetual sign of His eternal covenant between Him and His people." *Living the Sabbath*, Seventh-day Adventist Church, http://bit.ly/331SmuL.

28. This practice is biblically ordained. The Fourth Commandment instructs: "Remember the Sabbath day, to keep it holy … . [T]he seventh day is the Sabbath of the Lord thy God, in it thou shalt not do any work … ." *Exodus* 20:8-10 (King James).

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

29. The hours of the Sabbath are sacred time devoted to God in worship and pursuit of Him for His purposes. Seventh-day Adventists must spend the day in rest, prayer, and collective worship. *See Living the Sabbath*, Seventh-day Adventist Church, http://bit.ly/331SmuL.

30. The Sabbath "encompasses [Seventh-day Adventist's] entire relationship with God." Not keeping it has serious consequences, leading "to the distortion and eventual destruction of a person's relationship with God." *Sabbath Observance*, Seventh-day Adventist Church, http://bit.ly/2YDyrCU.

31. The Chungs observe the Sabbath every week in accordance with their religious faith.

32. For the Chung family, keeping the Sabbath holy is a serious commitment. J.G.C. and J.N.C. do not play or practice tennis on the Sabbath, and J.G.C. missed her own high-school graduation ceremony because it was held on the Sabbath.

33. All the children in the Chung family, including J.G.C. and J.N.C., began taking private music lessons at between six and seven years old. Most of their music teachers throughout the years have scheduled recitals so that the Chung children could participate, and no member of the Chung family ever participated in a music recital on the Sabbath.

34. The state solo and ensemble music competitions, also organized by WIAA, have historically been scheduled for Fridays and Saturdays. The Chung children have never participated in these competitions because of their commitment to the Sabbath.

35. J.G.C. and J.N.C. chose to compete in tennis, rather than sports that traditionally play on Friday nights and Saturdays, because tennis matches are typically scheduled on weekdays.

*WIAA's Tournament and Rules*

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

36. Each year, WIAA member schools, including W.F. West, participate in post-season tennis competitions for their boys' and girls' teams culminating in state championships organized by WIAA.

37. The competitions are divided into three sequential stages—sub-district, district, and the state championships.

38. Only the most successful players from each sub-district tournament advance to the district tournaments, and only the top three players from W.F. West's district tournament advance to the state championships.

39. Although each stage is a separate tournament, and although the stages can be separated in time by months, WIAA's Rule 22.2.5 provides that, absent "injury, illness or unforeseen events," athletes who enter postseason play must be able to complete it:

> By entering participants in postseason competition, each member school certifies that, barring injury, illness or unforeseen events, the team or individuals representing the school will participate in every level of competition through the completion of the state championship event.

WIAA, *2018–19 Official Handbook* (Handbook) 48, https://perma.cc/P67U-GCPH.

40. Rule 22.2.6 states the consequences for violations of Rule 22.2.5:

> Any withdrawal or intentional forfeiture shall be considered a violation of WIAA rules and regulations, and shall be subject to penalties as determined by the WIAA Executive Board.

*Id.*

41. Despite this restriction, WIAA's regulations include a mechanism for replacing players who advance from the district tournament but are "unable to compete" in the state championship. WIAA, *2018–19 Bound for State Regulations-Tennis* 2, http://bit.ly/2KeOC0o (Regulations). In that scenario, the "next qualified contestant" from the district tournament serves as a substitute. *Id.*

*WIAA Denies an Accommodation*

42. J.G.C. was a dedicated and talented player on W.F. West's girls' tennis team all four years of high school, from 2015–19.

43. At no point in J.G.C.'s high-school career did she face a conflict between a regular-season match and the Sabbath.

44. J.G.C. was one of the top players on the team. She first qualified to represent W.F. West in postseason play in 2017–18, her junior year.

45. That year, J.G.C. advanced out of the sub-district tournament, but had to withdraw before the district tournament and allow an alternate to take her place when one of her district matches was scheduled to be played on the Sabbath.

46. At the time, J.G.C. was unaware that this withdrawal presented any issues under WIAA rules.

47. Pointing to WIAA's Rule 22.2.5, however, coaches from other teams expressed displeasure with J.G.C.'s giving her spot to an alternate player for the remainder of the competition.

48. The next year, J.G.C. was again expected to qualify for postseason play.

49. In light of the previous year's events, the Chung family contacted WIAA to obtain express permission for J.G.C. to play in postseason competition, even if it were too late for the 2018–19 state championship dates to be moved.

50. The state championship tournament was scheduled for Friday, May 24, and Saturday, May 25, 2019.

51. The matches both days were scheduled to take place before sundown, so only the Saturday matches conflicted with J.G.C.'s Sabbath observance.

52. J.G.C. could not participate in the Saturday matches because engaging in sports or similar recreational activities is incompatible with Sabbath observance.

53. As a result of her inability to play in the final matches of the state tournament, WIAA's Rule 22.2.5 also barred J.G.C. from participating in the sub-district and district tournaments, which did not conflict with her Sabbath.

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

54. The Chungs wrote to WIAA seeking a religious accommodation for J.G.C. in February 2019, three months before the state tournament was scheduled to take place.

55. They asked WIAA to "change rule 22.2.5 to allow religious observances as a valid reason to drop out of the tournament" so that Sabbatarians "can play as far as they are able until Sabbath becomes an issue."

56. The Chungs requested that this exception be formalized by amending Rule 22.2.5 to list religiously motivated withdrawals as acceptable, adding them to the already existing secular exceptions.

57. This would protect not just the Chungs but also all Saturday Sabbath observers who participate in interscholastic activities in the State of Washington, including Jewish students, other Seventh-day Adventists, and members of other faiths.

58. The Chungs also asked that WIAA "move the 2A state tennis tournament" to weekdays beginning in 2019–20.

59. WIAA had previously made a scheduling change for the girls' volleyball state championships after a lawsuit from Saturday Sabbatarians seeking an accommodation. *See* Notice of Settlement, *Jacobson v. WIAA*, No. 15-2-25734-0 SEA (Super. Ct. Wash. June 5, 2017); Jayda Evans, *Parents Settle Religious Discrimination Lawsuit with WIAA over Volleyball State Tournament*, Seattle Times (June 23, 2017), https://perma.cc/QFP4-VYRM.

60. On information and belief, WIAA has never scheduled athletic events on Sundays, a practice that originated, and likely continues in large part, from respect for Sunday Sabbath observers.

61. WIAA had also previously moved the golf state championships from a Friday/Saturday schedule to earlier in the week. That change was made to remove a conflict with the state tournaments for certain other boys' sports so that the boys would not have to choose between sports. Many tennis coaches would like to move the

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

tennis state tournament to a weekday schedule to avoid conflicts with the basketball and track tournaments that are usually scheduled for the same weekend.

62.  The same week in February that the Chungs wrote to WIAA, their pastor also sent a letter to WIAA, confirming the Chungs' religious beliefs and explaining the importance of the Sabbath to Seventh-day Adventists.

63.  The Northwest Religious Liberty Association (NRLA) also sent a letter in February to WIAA officials, requesting the same changes to the tournament and rules on behalf of the Chungs.

64.  On March 4, 2019, WIAA responded to NRLA, verifying the receipt of the letters requesting that the tournament date be changed to allow Saturday Sabbath-observing athletes the opportunity to participate.

65.  NRLA replied to WIAA on March 12, clarifying that the Chungs were seeking not only the date change but also the accommodation of religiously motivated withdrawals under Rule 22.2.5.

66.  The Chungs sent WIAA a second letter, through counsel, on April 17. The Chungs reiterated their request that J.G.C. be permitted to participate in all matches until Friday at sundown, including in the sub-district and district tournaments, without risking penalties if she qualified for the state championship tournament.

67.  Meanwhile, in regular-season play, J.G.C. went undefeated. Her coaches therefore again selected her to represent W.F. West in postseason play.

68.  W.F. West's 2018–19 sub-district and district tournaments were scheduled in a way that did not overlap with the Sabbath. The sub-district tournament was held before sundown on Friday, May 3, and Tuesday, May 7, 2019. The district tournament was held the following week, on Thursday, May 16, and before sundown on Friday, May 17. Thus, a Sabbath conflict would materialize only if J.G.C. advanced through the sub-district tournament, the district tournament, and the first day of the state championships.

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

69.  On April 23, however, WIAA finally responded to the Chung family via a letter to counsel, Charles Steinberg. WIAA denied J.G.C. a religious accommodation, claiming that the Chungs' request "violates specific WIAA rules and cannot be granted."

70.  WIAA stated that Rules 22.2.5 and 22.2.6 "are strictly enforced and have not been waived in the past."

71.  Moreover, WIAA said religiously motivated tournament withdrawals would (1) be "unfair to the athlete who would have qualified" but for the withdrawing athlete and (2) "create a competitive advantage for the athlete scheduled to play the forfeiting athlete, who now has the luxury of a bye while the other competitors must continue playing."

72.  Although WIAA had previously moved the state volleyball tournament to accommodate Sabbath observers, it claimed it could not make a similar accommodation "[i]n individual sports where multiple matches must be played," even though other individual sports have mid-week tournaments.

73.  As a result, J.G.C. was barred from competing in all postseason play.

74.  Without its top player, W.F. West finished two points behind the school that accumulated the most points in the 2A girls' state tennis championship tournament.

*2019–2020 Boys' State Tennis Championships*

75.  WIAA has already set the 2A boys' tennis state championship tournament to take place on Friday, May 29, and Saturday, May 30, 2020.

76.  J.N.C. expects to be selected to represent W.F. West in the 2019–20 postseason. Sub-district play will begin soon after the last regular-season match currently scheduled for W.F. West, which is on October 9, 2019.

77.  Last year, J.N.C. was selected for postseason play as a freshman. Notwithstanding WIAA's illegal and discriminatory interpretation of Rules 22.2.5 and 22.2.6 to bar religiously motivated postseason withdrawals, he entered postseason play be-

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

cause he knew that he would not be successful enough to advance to the state championships and encounter a Sabbath conflict. As expected, he did not qualify to advance out of the district tournament.

78.  This year, however, J.N.C. expects to be competitive in qualifying for the state championships. Thus, J.N.C. will be barred from participating in any of the postseason play the same way that J.G.C. was.

79.  J.N.C. is far from the only athlete in Washington who will be impacted in this way by WIAA's actions. One of J.N.C.'s teammates is also a devout Seventh-day Adventist and will also be forced to sit out the 2019–20 postseason unless the state championship dates are changed or WIAA is enjoined from enforcing Rules 22.2.5 and Rule 22.2.6 against religiously motivated tournament withdrawals.

80.  Further, in 2018, two Saturday Sabbath observers on a 1A boys' tennis team in Cheney, Washington, were forced to sit out of postseason competition because of a Sabbath conflict. See Lee Hughes, *Local Parent Requests WIAA Honor Saturday Sabbath for Student Players*, Cheney Free Press (May 23, 2019), http://bit.ly/2SViMcW. They asked for an accommodation in April 2018, but WIAA refused. *Id.*

81.  Of the 120 state championship events WIAA has organized for 2019–20, none includes competition on Sunday. See State Championship Dates 2019–20, http://bit.ly/2ycQelA.

## CLAIMS

### Count I
### 42 U.S.C. § 1983
### Violation of the First Amendment to the U.S. Constitution
### Free Exercise Clause
### Tournament Scheduling

82.  Plaintiffs incorporate by reference all preceding paragraphs.

83.  "[L]aws burdening religious practice must be of general applicability." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993).

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

84. There is no generally applicable rule mandating that postseason state tournaments be scheduled on Fridays and Saturdays.

85. WIAA's Executive Board determines the dates for state championship tournaments at its discretion.

86. In both the 2018–19 and 2019–20 academic years, the 1B and 2B girls' volleyball state championship tournaments were scheduled to be held on a Thursday and Friday. Those tournaments involve a round of 16 and quarterfinals played the first day, and semi-final and final matches held the second day.

87. This is the same format as the 2A boys' and girls' tennis state championship tournaments.

88. Furthermore, in those same academic years, all of the boys' and girls' golf state championship tournaments were scheduled to be held on a Tuesday and Wednesday.

89. WIAA, therefore, has no compelling interest in scheduling tournaments for either team or individual sports on Saturday.

90. To the extent WIAA may claim any interests, the means chosen by WIAA are not the least restrictive to religion.

91. J.G.C. and J.N.C. cannot compete in recreational activities between sundown Friday and sundown Saturday because of their sincerely held religious beliefs as Seventh-day Adventists.

92. J.N.C.'s and J.G.C.'s religious exercise has been and will be substantially burdened by WIAA's decision to schedule the state tennis championship tournament between sundown Friday and sundown Saturday.

93. The only way for J.G.C. and J.N.C. to participate in postseason competition without facing a penalty, including at the sub-district and district levels, would be to reject their sincerely held religious beliefs.

94. WIAA's choice of scheduling the state championship tournament between sundown Friday and sundown Saturday does not further any compelling state interest according to the means least restrictive of religious exercise.

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

95.  WIAA's scheduling decision violates the Free Exercise Clause of the First Amendment to the United States Constitution.

96.  Unless the schedule for the 2019–20 2A boys' tennis state championship tournament is changed, J.N.C. will not be able to compete in the sub-district and district tournaments that are set to begin in October 2019.

97.  Absent injunctive and declaratory relief against WIAA, J.G.C., J.N.C., and other student-athletes in Washington who observe the Sabbath have been and will continue to be irreparably harmed.

**Count II**
**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise Clause**
**The Withdrawal Rule**

98.  Plaintiffs incorporate by reference all preceding paragraphs.

99.  WIAA's rules also fail to be generally applicable to all individuals participating in its athletic activities.

100.    Rule 22.2.5 requires that each student entering postseason competition participate in every level of the competition until the completion of the championship event.

101.    A participant who withdraws or intentionally forfeits violates WIAA rules and regulations and is subject to penalties as determined by WIAA's Executive Board.

102.    But under Rule 22.2.5, tournament withdrawals in situations of injury, illness, or unforeseen events are exempted from this requirement and the corresponding penalties.

103.    The Chungs' sincerely held beliefs as Seventh-day Adventists preclude them from competing in recreational activities between sundown Friday and sundown Saturday.

104.    Therefore, they requested a change to Rule 22.2.5 that would allow for tournament withdrawal because of religious obligations.

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

105.    By allowing exceptions for illness, injury, or unforeseen events, but denying an exception for religious observance, WIAA disfavors religious reasons compared to secular reasons.

106.    The rule is underinclusive because it fails to restrict nonreligious conduct that endangers the rule's purported aims in the same way as the Chungs' requested accommodation would.

107.    WIAA's refusal to change Rule 22.2.5 is a refusal to accord equal treatment to players facing secular and religious obstacles to full tournament participation.

108.    Denying this exception has substantially burdened and will substantially burden J.G.C.'s and J.N.C.'s free exercise by barring them from postseason competition unless they violate their religious beliefs.

109.    WIAA does not have a compelling government interest pursued by the least restrictive means to justify this unequal application of its rules against sincere religious believers.

110.    WIAA's application of Rule 22.2.5 to prohibit religiously motivated withdrawals violates the Free Exercise Clause of the First Amendment to the United States Constitution.

111.    Unless WIAA is enjoined from applying its rules to bar religiously motivated tournament withdrawals, J.N.C. will not be able to compete in the sub-district and district tournaments set to begin in October 2019.

112.    Absent injunctive and declaratory relief against WIAA, J.G.C., J.N.C., and other student-athletes in Washington who observe the Sabbath have been and will continue to be irreparably harmed.

### Count III
### Violation of the Washington Constitution, Article 1, § 11
### Tournament Scheduling

113.    Plaintiffs incorporate by reference all preceding paragraphs.

Compl. – 14

114.     Article 1, § 11 of the Washington Constitution provides that "[a]bsolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual."

115.     "The language of [Washington's] state constitution is … stronger than the federal constitution." First Covenant Church of Seattle v. City of Seattle, 840 P.2d 174, 186 (Wash. 1992).

116.     J.G.C.'s and J.N.C.'s free exercise is substantially burdened by WIAA's decision to schedule the 2A state tennis championship tournaments during the Seventh-day Adventist Sabbath.

117.     J.G.C. and J.N.C. cannot compete in recreational activities between sundown Friday and sundown Saturday because of their sincerely held religious beliefs as Seventh-day Adventists.

118.     J.G.C. and J.N.C. have been or will be forced to choose between their religious obligations and the opportunity to compete.

119.     As an undefeated player in the regular season her senior year, J.G.C. had tremendous potential for success at the state tournament. She had worked hard to prepare for this opportunity for four years.

120.     J.N.C. is an incoming sophomore on W.F. West's tennis team. Beginning in 2020, he will be similarly denied the opportunity to compete in postseason play for three consecutive years solely on account of his religious beliefs.

121.     Infringement of a citizen's constitutional right must by justified by a compelling state interest "that prevents a clear and present, grave and immediate danger to public health, peace, and welfare." First Covenant Church, 840 P.2d at 187 (citation and internal quotation marks omitted).

122.     WIAA offers no such interest.

123.     WIAA's Executive Board determines the dates for all regional and state tournaments at its discretion.

Compl. – 15

124.     In both the 2018–19 and 2019–20 academic years, the 1B and 2B girls' volleyball state championship tournaments were scheduled to be held on a Thursday and Friday. Those tournaments involve a round of 16 and quarterfinals played the first day, and semi-final and final matches held the second day.

125.     This is the same format as the 2A boys' and girls' tennis state championship tournaments.

126.     Furthermore, in those same academic years, all of the boys' and girls' golf state championship tournaments were scheduled to be held on a Tuesday and Wednesday.

127.     WIAA, therefore, has no compelling interest in scheduling tournaments for both team and individual sports on Saturday.

128.     To the extent WIAA may claim any interests, the means chosen by WIAA are not the least restrictive to religion.

129.     WIAA's actions violate Article 1, § 11 of the Washington Constitution, which guarantees "absolute freedom of conscience in all matters" of religion.

130.     Unless the schedule for the 2019–20 2A boys' tennis state championship tournament is changed, J.N.C. will not be able to compete in the sub-district and district tournaments that are set to begin in October 2019.

131.     Absent injunctive and declaratory relief against WIAA, J.G.C., J.N.C., and other student-athletes in Washington who observe the Sabbath have been and will continue to be irreparably harmed.

## Count IV
## Violation of the Washington Constitution, Article I, § 11
## The Withdrawal Rule

132.     Plaintiffs incorporate by reference all preceding paragraphs.

133.     WIAA's application of Rule 22.2.5 to prohibit religious withdrawals from postseason competition imposes a substantial burden on the religious exercise of Saturday Sabbath observers by barring them from participating in any postseason athletic competition whatsoever if they are not willing to abandon their religious beliefs and participate in competition on the Sabbath.

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

134.    Because of Rule 22.2.5, J.G.C. was barred from participating as a full member of her school's tennis team in 2018–19 despite four years of hard work alongside her teammates and coach, and even though a Sabbath conflict would have arisen only if she had progressed to the last day of the state championship tournament.

135.    Under the current schedule, Rule 22.2.5 will similarly prevent J.N.C. from participating in any postseason tennis competition in 2019–20, even if the only Sabbath conflict is similarly on the last day of the state championship tournament.

136.    WIAA's refusal to extend Rule 22.2.5's secular exceptions to sincere religious believers is not narrowly tailored to a state interest of a grave and immediate nature.

137.    WIAA's application of Rule 22.2.5 thus violates Article 1, § 11 of the Washington Constitution.

138.    Unless WIAA is enjoined against applying its rules to bar religiously motivated tournament withdrawals, J.N.C. will not be able to compete in the sub-district and district tournaments set to begin in October 2019.

139.    Absent injunctive and declaratory relief against WIAA, J.G.C., J.N.C., and other student-athletes in Washington who observe the Sabbath have been and will continue to be irreparably harmed.

### Count V
### Violation of Wash. Rev. Code 28A.600.200
### Discrimination on the Basis of Creed
### Tournament Scheduling

140.    Plaintiffs incorporate by reference all preceding paragraphs.

141.    Wash. Rev. Code § 28A.600.200(1) prohibits WIAA from discriminating "in connection with any function it performs, on the basis of race, creed, national origin, sex or marital status."

142.    Section 28A.600.200(1) requires WIAA to reasonably accommodate religious exercise, unless accommodation would be an undue hardship.

Compl. – 17

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

143.     There is no rule mandating that state championship tournaments be scheduled on Fridays and Saturdays.

144.     The WIAA Executive Board sets the dates for state championship tournaments at its discretion.

145.     In both the 2018–19 and 2019–20 academic years, the 1B and 2B girls' volleyball state championship tournaments were scheduled to be held on a Thursday and Friday. Those tournaments involve a round of 16 and quarterfinals played the first day, and semi-final and final matches held the second day.

146.     This is the same format as the 2A boys' and girls' tennis state championship tournaments.

147.     Furthermore, in those same academic years, all of the boys' and girls' golf state championships were scheduled to be held on a Tuesday and Wednesday.

148.     It therefore does not cause undue hardship for WIAA to schedule tournaments for both team and individual sports without interfering with the Sabbath.

149.     J.G.C. and J.N.C., who observe the Seventh-day Adventist Sabbath, cannot compete in sports between sundown Friday and sundown Saturday.

150.     J.G.C.'s and J.N.C.'s religious practice has been and will be burdened due to WIAA's decision to schedule the tennis state championship tournament after sundown on Friday.

151.     Because of Rule 22.2.5, the only way for J.G.C. and J.N.C. to participate in any postseason competition would be for them to reject their sincerely held religious beliefs.

152.     WIAA would not incur undue hardship if it changed the schedule of the 2A state tennis championship tournaments because the change would not be costly, the change would not compromise safety, and the change would not infringe on the rights of other students.

153.     Unless the schedule for the 2019–20 2A boys' tennis state championship tournament is changed, J.N.C. will not be able to compete in the sub-district and district tournaments that are set to begin in October 2019.

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

154.    Absent injunctive and declaratory relief against WIAA, J.G.C., J.N.C., and other student-athletes in Washington who observe the Sabbath have been and will continue to be irreparably harmed.

**Count VI**
**Violation of Wash. Rev. Code 28A.600.200**
**Discrimination on the basis of creed**
**The Withdrawal Rule**

155.    Plaintiffs incorporate by reference all preceding paragraphs.

156.    WIAA's Rule 22.2.5 requires that each student entering postseason competition participate in every level of the competition until the completion of the championship event.

157.    A participant who withdraws or intentionally forfeits violates WIAA rules and regulations and is subject to penalties as determined by WIAA Executive Board.

158.    Rule 22.2.5 exempts from this requirement, and the corresponding penalties, situations of injury, illness, or unforeseen events.

159.    By allowing exceptions for illness, injury, or other circumstances, but denying an exception for religious observance, WIAA disfavors religious reasons compared to secular reasons.

160.    Rule 22.2.5 is underinclusive because it fails to restrict nonreligious conduct that endangers the Rule's purported aims in a similar way as the requested accommodation would.

161.    Because of Rule 22.2.5, J.G.C. and J.N.C. have been and will be unable to compete in the postseason tournaments for tennis simply because they could qualify for a match that falls during their Sabbath.

162.    WIAA would not suffer an undue hardship in allowing religiously motivated postseason withdrawals because it already affords the same treatment for withdrawals motivated by illness, injury, or unforeseen events.

163.    Thus, the change would not be costly, would not compromise safety, and would not infringe on the rights of other students or employees.

Compl. – 19

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

164.     Unless WIAA is enjoined from applying its rules to bar religiously moti-
vated tournament withdrawals, J.N.C. will not be able to compete in the sub-district
and district tournaments set to begin in October 2019.

165.     Absent injunctive and declaratory relief against WIAA, J.G.C., J.N.C., and other
student-athletes in Washington who observe the Sabbath have been and will continue to be irrep-
arably harmed.

**Count VII**
**42 U.S.C. § 1983**
**Violation of the Religion Clauses**

166.     Plaintiffs incorporate by reference all preceding paragraphs.

167.     "The clearest command of the Establishment Clause is that one religious
denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S.
228, 244 (1982); see also *Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1263 (10th
Cir. 2008) (First Amendment's Religions Clauses do "not permit government officials
to sit as judges" of religious standards).

168.     WIAA does not schedule state championship play on Sunday—the day
of the week most widely viewed by other Christian faiths as the Sabbath.

169.     Of the 120 state championship events WIAA has organized for 2019–20,
none includes competition on Sunday.

170.     Thus, Washington high-school athletes who are members of other Chris-
tian faiths that observe the Sabbath on a Sunday are never required to compete on
their Sabbath, and never forced to choose between competing for a state champion-
ship and adhering to their sincerely held religious beliefs. Saturday Sabbatarians like
J.G.C. and J.N.C., however, are faced with that requirement.

171.     WIAA's discriminatory actions interfere with the free exercise of religion
by Saturday Sabbatarians like J.G.C. and J.N.C. and violate the Religion Clauses.

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

172.     Absent injunctive and declaratory relief against WIAA, J.G.C., J.N.C., and other student-athletes in Washington who observe the Sabbath have been and will continue to be irreparably harmed.

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

### Count VIII
### 42 U.S.C. § 1983
### Violation of the Fourteenth Amendment to the U.S. Constitution
### Equal Protection Clause

173.     Plaintiffs incorporate by reference all preceding paragraphs.

174.     Under the Equal Protection Clause of the United States Constitution, no state shall deny to any person the equal protection of the laws. This provision requires that similarly situated persons be treated similarly.

175.     Under this Clause, courts apply strict scrutiny to state action that interferes with a fundamental right, like the right to free exercise of religion.

176.     WIAA does not schedule state championship play on Sunday—the day of the week most widely viewed by other Christian faiths as the Sabbath.

177.     Of the 120 state championship events WIAA has organized for 2019–20, none includes competition on Sunday.

178.     Thus, Washington high-school athletes who are members of other Christian faiths that observe the Sabbath on a Sunday are never required to compete on their Sabbath, and never forced to chose between competing for a state championship and adhering to their sincerely held religious beliefs. Saturday Sabbatarians like J.G.C. and J.N.C., however, are faced with that requirement.

179.     WIAA's discriminatory actions interfere with the free exercise of religion by Saturday Sabbatarians like J.G.C. and J.N.C. and are not the least restrictive means of advancing any compelling state interest.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court:

a.   Declare that the First and Fourteenth Amendments to the United States Constitution, the Washington Constitution, and Washington's statutory prohibition on religious discrimination by WIAA require Defendant to cease discriminating against

Compl. – 22

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

Plaintiffs and to cease preventing Plaintiffs from participating in state postseason tennis competition on account of their religious beliefs.

b.   Issue preliminary and permanent injunctions barring Defendant from holding matches in the 2019–20 2A Boys State Tennis tournament between Friday sundown and Saturday sundown.

c.   Issue preliminary and permanent injunctions enjoining WIAA from enforcing its Rules 22.2.5 and 22.2.6 to prohibit J.N.C. from participating in postseason tennis competitions up to and until he is forced to withdraw because of a conflict with his Sabbath.

d.   Award J.G.C. nominal and compensatory damages for the loss of her rights as protected by the United States and Washington Constitutions and Wash. Rev. Code § 28A.600.200.

e.   Award Plaintiffs the costs of this action and reasonable attorneys' fees; and

f.   Award such other further relief as the Court deems equitable and just.

## JURY REQUEST/DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted this 6th day of August, 2019.


/s/ *Eric S. Baxter*

ERIC S. BAXTER*
JOSEPH C. DAVIS*
The Becket Fund for Religious Liberty
1200 New Hampshire Ave, N.W.
  Suite 700
Washington, DC 20036
(202) 955-0095
ebaxter@becketlaw.org

*Pro Hac Vice admission pending*

/s/ *Charles R. Steinberg*

CHARLES R. STEINBERG, WSBA #23980
The Steinberg Law Firm, P.S.
323 N. Miller Street
Wenatchee, WA 98801
(509) 662-3202
charles@ncwlaw.com

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095