The Honorable Ricardo S. Martinez

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| J.N.C. and J.D.C., by and through their parents and legal guardians, PAUL Y. CHUNG and IRIS J. CHUNG,<br><br>– and –<br><br>JOELLE G. CHUNG,<br><br>– and –<br><br>A.A.B. and A.H.B., by and through their parents and legal guardians, RICHARD D. BOGGESS and JANET L. BOGGESS,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>WASHINGTON INTERSCHOLASTIC ACTIVITIES ASSOCIATION,<br><br>    *Defendant*. | No. 3:19-cv-05730-RSM<br><br>**PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF WILLIAM E. PARTIN**<br><br>**NOTE ON MOTION CALENDAR: SEPTEMBER 18, 2020** |

Pls' Mot. to Exclude Expert Testimony
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

    I.  Partin's testimony should be excluded under Rule 702. .................................... 3

        A.  Partin's testimony isn't sufficiently tied to the facts
           of this case. ............................................................................................. 4

        B.  Partin's testimony isn't the product of reliable methods. ............................ 8

    II.  Partin's testimony should be excluded because it is
        substantially more prejudicial than probative. ............................................... 11

CONCLUSION .................................................................................................................. 12

LCR 7(d)(4) CERTIFICATION ......................................................................................... 13

Pls' Mot. to Exclude Expert Testimony – i
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

**INTRODUCTION**

It's a truism that "[a]n expert must offer an opinion that fits the case at hand, not some other, hypothetical case[.]" *Trana Discovery, Inc. v. S. Research Inst.*, 915 F.3d 249, 255 (4th Cir. 2019). The expert testimony of William E. Partin, proffered by Defendant Washington Interscholastic Activities Association (WIAA), violates this basic principle and thus must be excluded.

Plaintiffs' case is about whether the First Amendment and state law require WIAA to schedule Washington's 2A high-school tennis state championship so that Plaintiffs can participate without violating their Sabbath. Mr. Partin's expert testimony about the potential financial costs of rescheduling the tournament misses the mark for at least two reasons.

First, Partin doesn't analyze the impact of rescheduling the 2A tennis tournament, which charges no admission and takes in negligible revenue from merchandise sales. Instead, he analyzed the impact of WIAA rescheduling *all* tournaments, for *all* high-school sports, concluding it would cost WIAA well over half a million dollars in ticket sales and related revenue, leading—perhaps—to "an end to WIAA tournaments" altogether. Ex.1, App.A, at 12.

This Chicken Little testimony lacks the faintest connection to this case. Plaintiffs don't seek to reschedule all WIAA tournaments; they seek to reschedule theirs. And Partin ignores the fact that WIAA already accommodates Sabbath-observing entrants in all the major revenue-generating sports *without* moving their tournaments. Confronted with these errors, Partin admitted that his analysis was "not really helpful" to the issue at hand: the cost of "moving the tennis tournament back, for example, one day[.]" Ex.2 61:11-17.

Moreover, even assuming Partin's testimony did fit the facts of this case, it still should be excluded. Partin based his all-sport analysis on attendance data from basketball, but identified no reason to think the same attendance patterns would obtain

Pls' Mot. to Exclude Expert Testimony – 1
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

for other sports (or for the only relevant sport, tennis)—a conclusion also belied by his own data. And he simply assumed that if basketball ticket sales were higher on Saturdays, they were higher *because* they were on Saturdays—failing to rule out other obvious explanations for any correlation, such as a consumer preference for attending championship rounds. Partin also failed to consider that many of the revenue-generating sports have fan bases extending beyond the family and friends of athletes who comprise most attendees at the state tennis tournament and who rely on significantly different factors in deciding whether and when to attend.

Admissible expert testimony must be "not only relevant, but reliable." *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Partin's proposed testimony is neither. Faithful "gatekeeping" (*id.* at 597) requires this Court to exclude it.

## BACKGROUND

Plaintiffs are current and former tennis players at William F. West High School (W.F. West) in Chehalis, Washington. They are also devout Seventh-day Adventists who cannot, consistent with their faith, play competitive tennis on their Sabbath—*i.e.*, between sundown Friday and sundown Saturday.

Plaintiffs filed this suit in August 2019, challenging—under federal and state free-exercise provisions and a state statute prohibiting religious discrimination—two WIAA policies that barred them from fully participating in postseason tennis because of their religious beliefs: (1) a WIAA rule that prohibited players from withdrawing from postseason competition for reasons of religious observance, and (2) WIAA's practice of scheduling the state championship tennis tournament for W.F. West's classification—2A—to take place on the Sabbath. ECF 1; *see* ECF 34 (Am. Compl.). Because the 2019 season was set to begin in October, Plaintiffs also sought a preliminary injunction. ECF 10. Soon after Plaintiffs sued, WIAA amended the rule to permit religious withdrawals. ECF 27. Plaintiffs therefore withdrew their motion, and the case proceeded to discovery.

Pls' Mot. to Exclude Expert Testimony – 2
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

On May 13, 2020, WIAA disclosed William Partin as an expert witness. Ex.1. The disclosure statement states that WIAA engaged Partin to testify "on the detrimental economic effects on the WIAA's revenues from state championship tournaments that would be caused if tournaments that presently conclude on a Saturday … were instead to be scheduled to occur on Mondays through Thursdays[.]" *Id.* at 2.

To conduct this analysis, Partin reviewed ticket sales data from WIAA's basketball tournaments. *Id.*, App.A, at 5-7. He observed that average per-team ticket sales in basketball are typically highest on Saturdays. *Id.* From this information, he concluded there was a general "consumer preference for Friday and Saturday events over" "events held on other days of the week." *Id.* at 7. Based on this purported preference, Partin then calculated the effect on ticket sales and merchandise and program revenue (which he treated as a function of ticket revenue) of rescheduling all state tournaments to take place between Mondays and Thursdays. *Id.*, Attach.1. He concluded that such a "two-day shift" "would result in an annual decline in operating profit in a range of $645,834." *Id.* at 11-12.

Plaintiffs disclosed a rebuttal expert. Ex.3. The rebuttal report pointed out that, while WIAA charges admission for many sports, it does not sell tickets for tennis. *Id.*, App.A, at 3-4. It therefore concluded that it is "unlikely there would be *any* financial impact from accommodating Plaintiffs' … request." *Id.* (emphasis added). The report further explained that by ignoring the accommodation Plaintiffs "actually request," Partin had conducted an "elaborate mathematical exercise" that was "disconnected" from the facts of this case, "wholly unreasonable," and "unreliable." *Id.* at 7-8.

## ARGUMENT

### I. Partin's testimony should be excluded under Rule 702.

WIAA bears the burden of proving Partin's testimony is admissible. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Federal Rule of Evidence 702 requires the trial judge to "ensure that any and all [expert] testimony or evidence admitted is not

Pls' Mot. to Exclude Expert Testimony – 3
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

only relevant, but reliable." *Daubert*, 509 U.S. at 589. Because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," this "gatekeeping role" is crucial. *Id.* at 595, 597.

Relevance is determined by "fit"—*i.e.*, whether the proffered expert testimony "is sufficiently tied to the facts of the [instant] case" such "that it will aid the jury in resolving a factual dispute." *Id.* at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Reliability turns on "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017); *see also Johnson v. Kelly*, No. C16-0635JLR, 2017 WL 1838140, at *3 (W.D. Wash. May 8, 2017) (courts consider "the soundness of the methodology" and "the analytical connection between the data, the methodology, and the expert's conclusions"). Partin's testimony fails both requirements.

### A. Partin's testimony isn't sufficiently tied to the facts of this case.

Rule 702 first requires that expert testimony be "sufficiently tied to the facts of the case" to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. This inquiry "goes primarily to relevance," *id.*, but is more stringent than "the general relevancy requirement of Rule 402," *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (*Daubert II*). To satisfy it, the court must be "convinced that" the expert's testimony "speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Id.*; *see Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (excluding expert testimony relying on assumptions that had "no relation to the facts of the case"). Partin's report flunks this "fit" requirement for two reasons.

First, the report considers the financial impact of rescheduling *all* state championship tournaments currently played on Saturdays. Ex.1, App.A, at 2. But Plaintiffs seek an accommodation only with respect to the 2A state tennis tournament. ECF 34 at 24 ¶ b (seeking injunctive relief barring WIAA from scheduling "matches for which

Pls' Mot. to Exclude Expert Testimony – 4
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

any Plaintiff qualifies *in future 2A Boys State Tennis tournaments*" during the Sabbath) (emphasis added). Plaintiffs play no WIAA sport other than tennis, and moving other tournaments would do nothing to satisfy their claims. Partin's report is thus wholly "[un]connect[ed] to the pertinent inquiry"—the impact on WIAA, if any, of rescheduling the 2A tennis tournament. *Daubert*, 509 U.S. at 591-92; *see also Trana Discovery*, 915 F.3d at 255 ("An expert must offer an opinion that fits the case at hand, not some other, hypothetical case[.]"); *Owens v. Auxilium Pharm., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018) (affirming exclusion because the expert gave "an opinion about a hypothetical" and thus testimony "did not fit the facts of" the case).

Indeed, although the entire point of the report is to analyze the "financial impact" of Plaintiffs' request, Ex.1, App.A, at 1, tennis strikingly plays *no* role in the report's revenue projections. This is for a straightforward reason: WIAA's revenue depends "primar[ily]" on ticket sales, *id.*, App.A, at 3, yet WIAA does not charge admission for the tennis tournament, *id.*, App.A, Attach.21. Thus, while Partin projects that rescheduling all championship tournaments would result in an annual decline in operating profits of $645,834, Ex.1, App.A, at 12, *none* of that decline—$0—is attributable to the actual accommodation Plaintiffs seek. *Id.*, App.A, Attachs.1, 4.

Viewed in relation to "the facts of th[is] case," then, Partin's report plainly is not "help[ful]" for "the trier of fact … [in] determin[ing] a fact in issue." *Daubert*, 509 U.S. at 591. And indeed, at his deposition, Partin admitted as much:

> Q. So you would agree that [your analysis] is not really helpful to determining what the cost would be of just moving the tennis tournament back, for example, one day?
>
> A. If you just limited it to tennis tournament only and that was your sole assumption no, then those two are not comparable.

Ex.2 61:11-17; *accord id.* 60:10-13 ("Q. So you do not consider the hypothetical situation where only the tennis 2A tournament is shifted; is that correct? A. That's correct,

Pls' Mot. to Exclude Expert Testimony – 5
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

1   I did not."), 24:17-19 ("Q. [Y]ou didn't calculate the rate of change for tennis, even though this case is about tennis? A. That's correct."). By his own admission, then, Partin agrees with Plaintiffs' rebuttal expert: his analysis is "disconnected from fairly and reasonably assessing the financial impact of what Plaintiffs actually request." Ex.3, App.A, at 7.

Nor can WIAA offer any explanation to bridge the gap. For Partin's part, the report baldly asserts that "Plaintiffs seek to have the WIAA not schedule *state championship competition*" on the Sabbath, Ex.1, App.A, at 2 (emphasis added)—a foundational assumption that is "indisputably wrong." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

WIAA's theory, meanwhile, appears to be that the impact of rescheduling sports other than tennis matters because "if one the tournaments is changed so as not occur a Saturday Sabbath date [*sic*]," "all of the[m]" would eventually have to be changed in response to other requests. Ex.4 at 19. But "look[ing] to the … substantive standard" governing Plaintiffs' claims, *Daubert II*, 43 F.3d at 1320, that theory is squarely foreclosed by precedent. Plaintiffs' claims are governed by two substantive standards: the "compelling interest" test (governing Plaintiffs' constitutional free-exercise claims) and the "undue hardship" test (governing Plaintiffs' statutory claim). ECF 10 at 7-8, 15-16, 20-21. Under both, WIAA's "concern that accommodating [Plaintiffs'] request would lead to other similar requests" is irrelevant. *Nance v. Miser*, 700 F. App'x 629, 632-33 (9th Cir. 2017) (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006)); *see Opuku-Boateng v. California*, 95 F.3d 1461, 1474 (9th Cir. 1996) ("[T]he mere possibility that there would be an unfulfillable number of similar requests for similar accommodations by others cannot constitute undue hardship."). Indeed, the Supreme Court has derided such arguments as "the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *O Centro*, 546 U.S. at 436.

Pls' Mot. to Exclude Expert Testimony – 6
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

1   The theory also doesn't even make sense on its own terms. WIAA already accommodates Sabbath-observing teams in team sports (including basketball) simply by retaining its current Friday–Saturday schedule but scheduling games in which Sabbath-observing teams are involved before sundown on Friday or after sundown on Saturday. Ex.5 63:6-64:23; *see* Ex.6 WIAA12605-06. It defies logic to suggest that moving the tennis tournament to accommodate Sabbath-observing entrants like Plaintiffs would require WIAA to move other tournaments that *already* accommodate Sabbath-observing entrants. So Partin's "assumption[]" is not only legally irrelevant but "lack[s] any factual foundation in the record." *Skydive Ariz., Inc. v. Quattrocchi*, No. CV 05-2656-PHX-MHM, 2009 WL 2515616, at *5 (D. Ariz. Aug. 13, 2009).

Second, Partin's report is also an ill "fit" for the facts of this case because it analyzes the financial impact on WIAA of scheduling tournaments "on days limited to Mondays through Thursdays." Ex.1, App.A, at 2. Yet Plaintiffs' tennis accommodation wouldn't limit WIAA to Mondays through Thursdays; the only time they cannot play is "between Friday sundown and Saturday sundown." ECF 34 at 24 ¶ b. The report nowhere explains why it eliminated three days or parts of days available to WIAA—especially Fridays before sundown.[1]

That omission is telling. Partin agreed at his deposition that if his analysis were run using a one-day change, the "loss … would be significantly less." Ex.2 13:5-11. And history provides an example of what *has* happened when WIAA rescheduled a formerly Friday–Saturday tournament to be played on Thursday–Friday—and WIAA's own data suggests the impact was negligible. In 2017, WIAA moved the 1B, 2B volleyball tournaments from Friday–Saturday to Thursday–Friday to

---

[1] At his deposition, Partin suggested that he excluded Fridays because it isn't "feasible" for the tournament to be concluded by sundown. Ex.2 13:11-12. Yet Partin admitted that he isn't a tournament expert, *id.* 22:4-14; his report includes no mention of any "feasibility" analysis, *id.* 24:2-5; and WIAA's witness couldn't recall a time in which the second day of the 2A tennis tournament went past sundown, Ex.5 101:20-103:3.

Pls' Mot. to Exclude Expert Testimony – 7
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

accommodate Sabbath-observing teams. Ex.6 WIAA12606. That change has had minimal impact on tournament attendance (and thus, ticket revenue) at the 1B, 2B, 1A tournaments; indeed, in 2018, attendance *increased* from 2016. Ex.1, App.A, Attach.28.

Because Partin's report considers the financial impact from rescheduling *all* championship tournaments—rather than the 2A tennis tournament—and improperly assumes that Plaintiffs were only willing to play between Mondays and Thursdays, it is "[in]sufficiently tied to the facts of th[is] case," *Daubert*, 509 U.S. at 591 (emphasis added) (quoting *Downing,* 753 F.2d at 1242). His testimony should thus be excluded.

**B. Partin's testimony isn't the product of reliable methods.**

Rule 702's reliability prong requires that expert testimony also be "the product of reliable principles and methods" "reliably applied … to the facts of the case." Fed. R. Evid. 702. This inquiry considers "whether the reasoning or methodology underlying the testimony is scientifically valid." *Murray*, 870 F.3d at 922 (quoting *Daubert*, 509 U.S. at 592-93).

In scrutinizing reliability with respect to a regression analysis like Partin's here, the expert's failure to include significant variables can make the analysis "so incomplete as to be inadmissible." *Bazemore v. Friday*, 478 U.S. 385, 400 n.10 (1986). The Ninth Circuit has held that expert affidavits were properly excluded when the experts made no "effort to rule out other possible causes." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994); *see also Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1034-35 (N.D. Cal. 1999) (excluding witness in part because he ignored "controls," "alternative explanations," "background" noise, "empirical findings," and data that could disprove his theory). And courts in this district have excluded expert testimony that relied on flawed assumptions—even when the mathematical calculations supporting it were ostensibly correct. *Democratic Party Wash.*

Pls' Mot. to Exclude Expert Testimony – 8
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

*State v. Reed*, No. C00-5419FDB, 2002 WL 32925223, at *13 (W.D. Wash. Mar. 27, 2002).

Applying these principles, Partin's testimony fails reliability in at least two significant ways. First, it improperly assumes that weekday-versus-weekend basketball attendance statistics are a reliable indicator for consumer-attendance behavior in all other WIAA sports. Ex.1, App.A, at 6-8. Second, it improperly assumes that the day of the week is the only contributing factor as to whether an individual will attend a state championship event. *Id.*, App.A, at 7-8. For both reasons, "the reasoning [and] methodology underlying [Partin's] testimony is [not] scientifically valid." *Murray*, 870 F.3d at 922.

Partin's report gave three reasons why he "utilized basketball as a benchmark to measure consumer preferences between days of the week" for all WIAA sports: (1) it is the highest revenue-grossing sport; (2) it has the largest number of ticket sales; and (3) it is the only sport with a four-day tournament. Ex.1, App.A, at 5-6. But while these reasons may support the reliability of an analysis of attendance preferences in *basketball*, they don't speak at all to the critical question here—whether basketball preferences apply unchanged to *all other sports*. District courts aren't required to admit expert evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

And indeed, there are numerous reasons to believe that consumer preferences for basketball may not hold for tennis. For one, basketball is a team sport played in gymnasiums that often seat hundreds (or even thousands) of fans, and many attend games without any personal connection to the players or coaches. Ex.3, App.A, at 8. Tennis, on the other hand, is an individual sport, typically played outdoors in venues with far less seating, and primarily attended by players' friends and family—people who "are likely to attend regardless of the day of the week a match is held." *Id.*; *see* Beth A. Cianfrone *et al.*, *Identifying Key Market Demand Factors Associated with*

Pls' Mot. to Exclude Expert Testimony – 9
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

*High School Basketball Tournaments*, 24 Sport Marketing Q. 91, 93, 100 (2015) ("[H]igh school basketball regional tournaments have a number of unique characteristics," including that basketball is the "most popular" high-school sport), Ex.7. At his deposition, Partin himself conceded that less "mainstream" sports attract a "different type of consumer" potentially less sensitive to the day of the week than basketball fans, but never explained why this difference wasn't factored into his analysis. Ex.2 18:3-14.

And in fact, Partin's own calculations suggest that different WIAA sports have significantly different rates of change in attendance from day to day. Partin calculated the rate of change in attendance between Friday and Saturday for football and baseball, resulting in percentages differing significantly from those for basketball. *See, e.g.*, Ex.2 29:3-16 (Gridiron Classic one-day rate of decrease: approx. 23% (adults)); *compare id.* 12:11-20 (basketball one-day rate of decrease: approx. 28% (adults)); *see also id.* 32:23-33:7 (Partin "eyeballed" volleyball at "about a five-percent change"). And Partin reached the higher baseball figures only by excluding from consideration two years in which ticket sales in baseball *decreased* from Friday to Saturday—a striking omission that has gone entirely unexplained. *See generally* Ex.1, App.A, Attach.44 (no explanation); Ex.2 41:3-42:25 ("Q. [T]oday you have no reason why it was appropriate to omit the years where there were decreases in sales? A. … . I'd have to look back at the data to recall … .").[2]

Second, even assuming a general consumer trend of attending Saturday events, Partin's report fails to consider alternative explanations for it. Reviewing basketball data, Partin observes a correlation between the day a state tournament event is held and ticket sales: the closer a game is to Saturday, the higher the ticket sales. Ex.1,

---

[2] As this section of Partin's deposition testimony also shows, Partin's report included numerous basic mathematical errors, all cutting in favor of his conclusions. *See* Ex.2 35:10-36:12, 37:11-39:15.

Pls' Mot. to Exclude Expert Testimony – 10  
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY  
1200 NEW HAMPSHIRE AVE. NW, SUITE 700  
WASHINGTON, DC 20036  
TELEPHONE (202) 955-0095

App.A, at 5-7. Partin then concludes—without considering other plausible explanations—that more people attend Saturday games *because* they're played on Saturdays. *Id.*, App.A, at 7-8. But this ignores the possibility that the trend Partin observed could be explained by consumer preference for championship rounds. *Id.*, App.A, at 7 n.6 (assuming "consumers are indifferent regarding the stage of playoffs"). That obvious alternative explanation merited investigation—particularly since on-point academic literature (not cited by Partin) doesn't even list day of the week as among the "market demand factors for high school sport tournaments." Ex.7 at 95-96.[3]

The Ninth Circuit routinely excludes expert testimony that fails "to address and exclude alternative explanations for the data." *Carnegie Mellon*, 55 F. Supp. 2d at 1034; *see, e.g., Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984-87 (9th Cir. 2020). That course is warranted here. Partin's breezy leap from correlation to causation is "inadmissible in a federal court." *United States v. Artero*, 121 F.3d 1256, 1262 (9th Cir. 1997) (internal quotation marks omitted)).

**II. Partin's testimony should be excluded because it is substantially more prejudicial than probative.**

In the alternative, even otherwise-admissible evidence may excluded if "its probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. Here, even if Partin's report were admissible under Rule 702, it should nonetheless be excluded under Rule 403.

---

[3] Partin attempted to fill this gap at his deposition by asserting that his "assumption" that consumers are indifferent to the stage of playoffs is "consistent with data" "of Major League Baseball ticket sales." Ex.2 48:21-49:8. No such data was attached to or referenced in his report. *Cf.* Fed. R. Civ. P. 26(a)(2)(B), (B)(ii) ("report must contain … facts or data considered by the witness in forming" his opinion). And MLB fans would surely be surprised to learn that they should expect to pay the same amount for tickets to a World Series Game 7 as to a Wild Card Game. *See* Ex.2 54:2-4 ("Q. Often a higher price reflects a higher demand, correct? A. I would not disagree with that."). In any event, Partin ultimately recognized the obvious: the "primary consumer group" for MLB games isn't the same as that for high-school basketball. Ex.2 50:4-10.

Pls' Mot. to Exclude Expert Testimony – 11
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

First, Partin's testimony is of minimal-to-nonexistent probative value. Again, it considers the financial impact of rescheduling *all* state championship tournaments—but only the 2A state tennis tournament is at issue. And courts have emphatically rejected the notion that a defendant's worries about having to grant other religious accommodations tomorrow can justify the denial of an otherwise-required accommodation today. *O Centro*, 546 U.S. at 436; *Opuku-Boateng*, 95 F.3d at 1474.

Partin's report is also unfairly prejudicial. There appears to be *no* financial impact attributable to moving the 2A tournament. Ex.3, App.A, at 3; *compare* Ex.1, App.A, Attachs.1, 4 (tennis not included in loss calculation). Yet Partin's report associates Plaintiffs' request with nearly $650,000 in yearly operating losses, even suggesting that a win for Plaintiffs would mean "an end to WIAA tournaments" altogether. Ex.1, App.A, at 12. This sort of credentialed hyperbole well illustrates the "special dangers to the fact-finding process" posed by expert testimony. *Daubert II*, 43 F.3d at 1321 n.17. And it's more than enough to satisfy the standard for exclusion under Rule 403. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005) (even a "modest likelihood of unfair prejudice [is] high enough to outweigh the … probative value" of marginally relevant evidence (internal quotation marks omitted)).

## CONCLUSION

The Court should exclude the testimony of WIAA's expert William Partin.

| | |
|---|---|
| CHARLES R. STEINBERG, WSBA #23980<br>The Steinberg Law Firm, P.S.<br>323 N. Miller Street<br>Wenatchee, WA 98801<br>(509) 662-3202<br>charles@ncwlaw.com | /s/ *Eric S. Baxter*<br>ERIC S. BAXTER (*Pro Hac Vice*)<br>JOSEPH C. DAVIS (*Pro Hac Vice*)<br>The Becket Fund for Religious Liberty<br>1200 New Hampshire Ave, N.W.<br>  Suite 700<br>Washington, DC 20036<br>(202) 955-0095<br>ebaxter@becketlaw.org<br>jdavis@becketlaw.org |

*Attorneys for Plaintiffs*

Pls' Mot. to Exclude Expert Testimony – 12
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095

**LCR 7(d)(4) CERTIFICATION**

On September 1, 2020, counsel for Plaintiffs conferred by telephone with counsel for Defendant regarding the relief sought in this motion. The parties were unable to resolve the matters in dispute.

                                        /s/ *Joseph C. Davis*

Pls' Mot. to Exclude Expert Testimony – 13
3:19-cv-05730-RBL

THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 NEW HAMPSHIRE AVE. NW, SUITE 700
WASHINGTON, DC 20036
TELEPHONE (202) 955-0095