The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| J.N.C. and J.D.C., by and through their parents and legal guardians, PAUL Y. CHUNG and IRIS J. CHUNG,<br><br>-and-<br><br>JOELLE G. CHUNG,<br><br>-and-<br><br>A.A.B. and A.H.B., by and through their parents and legal guardians, RICHARD D. BOGGESS and JANET L. BOGGESS,<br>                    Plaintiffs,<br>   v.<br><br>WASHINGTON INTERSCHOLASTIC ACTIVITIES ASSOCIATION,<br>                    Defendant. | NO.: 3:19-cv-05730-RBL<br><br>MEMORANDUM OF DEFENDANT IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ECONOMIST EXPERT WITNESS WILLIAM PARTIN<br><br>(Noted for 09/25/2020 per Dkt. #47) |

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

# TABLE OF CONTENTS

1. Fact Background……………………………………………………..…..1

2. Relevance of Partin's Testimony………………………………………………….3

3. Unfounded Criticism of Partin's Work……………………………………….8

    A. Why More Than a One-Day Shift of Tournament Dates Was Used……...8

    B. Use of the Extensive Basketball Data ………….……………………..…9

    C. Purported Other Consumer Preferences…………………………………10

4. Absence of Unfair Prejudice……..………………………………………….12

5. Conclusion……………………………………………………………....…12

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE -i

wich-p-MM of Dt in Opp to Pls' MOSIL

**ROCKEY STRATTON, P.S.**
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

Defendant Washington Interscholastic Activities Association ("WIAA") opposes plaintiffs' motion *in limine* filed under LCR 7(d)(4), noted for 09/25/2020 ("Pltfs. Mo."). The motion should be denied. This case is not solely about the 2A state tennis tournament. Consequently, William Partin's ("Partin") testimony, on economic impact across all sports and other interscholastic activities, and on all WIAA member high schools, is admissible.

1. **Fact Background.** The WIAA was formed in 1905. Its members are Washington schools, including over 400 high schools, public and private. The WIAA organizes state championship tournaments in numerous sports and other interscholastic activities. The WIAA does not "run" high school sports. The individual leagues and schools around the state organize and conduct the competition below the state championship level. There are nine Districts of the WIAA around the state, which are separate entities with their own executive boards elected by the District's member schools. The District organizations carry out coordination among the leagues, arrange District level competitions that precede state championships, and carry out rule enforcement in conjunction with leagues and schools. The WIAA is governed by a 13-member Executive Board comprised of elected representatives from the schools, spread geographically throughout the state. The WIAA's Executive Director is hired by the Executive Board and reports to it.[1] The WIAA through its Executive Board and its Representative Assembly[2] establishes and interprets uniform state wide rules for interscholastic sports, such as eligibility rules and rules for classifications of high schools by size – i.e., enrollment, -- along with many other areas.[3]

---

[1] The Executive Director is Mick Hoffman, who assumed that position in Summer 2019 after a career as a teacher, coach, athletic director and administrator in Vancouver, Washington schools. See M. Hoffman Dep. at 10-14, attached in Declaration of Steve Rockey in Opposition to Plaintiffs' Motion in Limine, dated September 21, 2020 ("S. Rockey Decl."), Exh. 1. (For other depositions from which testimony is cited herein, the cited pages are in the subsequent exhibits of S. Rockey Decl., as listed in *id.*, ¶2.) Prior to August 2019, Mike Colbrese, who is now retired, was the Executive Director during all material years.

[2] The Representative Assembly consiss of 53 members elected by the WIAA member schools. It meets for a full day each January and provides "legislative" input to the WIAA Executive Board.

[3] See Decl. of Cindy Adsit, dated Sept. 21, 2020 ("C. Adsit Decl."), ¶¶3-4. The WIAA publishes a Handbook in the Summer preceding the start of each school year that is a comprehensive presentation of rules, policies and information. Exh. A. to C. Adsit Decl. shows the page from the 2019-20 Handbook listing the dates and locations of the state tournaments scheduled for that school year.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE -1

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

In team sports, the WIAA attempts to accommodate those of its member schools that are religiously affiliated and observe the Saturday Sabbath, in scheduling state tournament games. There are 7 such schools, all in the smallest enrollment classifications – *viz.*, those for the 1B and 2B schools.[4] The WIAA can do so in team sports because the limited number of such schools and the nature of team sports makes it possible to schedule contests involving those schools outside of sundown Friday to sundown Saturday without changing the scheduled tournament dates. Planning in state tournaments to have the 7 schools that observe the Saturday Sabbath not play in that 24 hour period has occurred in basketball, soccer, volleyball and baseball.[5]

It has not proved feasible to make accommodations in individual sports for participants from the Saturday Sabbath schools in the state tournaments. It was attempted one year, in 2005 in track and field. There were too many individual participants, however. The complexity in scheduling the events or contests and the order in which they had to proceed to advance from one stage of the state track meets to the next made it impossible to be fair to participants as a whole.[6] *Id.*, ¶10.

The state tournaments are nearly all scheduled to occur on a Saturday (for one-day tournaments) or Friday-Saturday (for two-day tournaments). *Id.*, ¶¶5, 11. Basketball requires four consecutive days (Wednesday through Saturday) in its present format. *Id.* Wrestling, gymnastics and track and field have three-day tournaments.

---

[4] The classifications brackets of high schools are based on the school's enrollment in the three grades 9 through 11 and presently are: 4A 1300 and over; 3A 900 – 1299; 2A 450 – 899; 1A 225 – 449; 2B 105 – 224; and 1B 1 – 104.

[5] *Id.*, ¶¶ 7, 9, 11. For volleyball, the accommodation came about near the end of a lawsuit that involved students from three of the seven schools listed above. The accommodation extended to all seven of the schools, however, as there was no basis for treating the other 4 schools any differently. Id., ¶11.

[6] The WIAA has made accommodations for religiously affiliated schools in ways other than scheduling state tournament contests. For example, in 2019, two Seventh Day Adventist schools that had boarding school programs asked that eligibility rules be adjusted for transfer students because the nature of their relationships with feeder schools caused students to transfer into their boarding programs at a point in their high school years when the existing rules of eligibility would cause there to be a "sit-out" or ineligibility period. In consultation with the leagues in which these two schools participated, the WIAA was able to address the fairness issues to satisfactorily accommodate the schools. *Id.*, ¶12.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 2

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

The 4 minor plaintiffs play tennis for W.F. West High School, a public high school in Chehalis, WA[7]. They seek injunctive relief, but not damages, in particular to require rescheduling of the state 2A tennis championship. P. Chung Dep. at 200, l. 18 – 201, l.3; Am. Cmplt. at 23-24. Plaintiffs contend the case is only about the 2A tennis tournament. The WIAA disagrees.

According to the Declaration of Plaintiff Paul Chung, M.D., he and Dr. Iris Chung, as parents of J.N.C., sent a letter on February 14, 2019 to the WIAA in which "[w]e asked WIAA to reschedule the 2A state tennis championship tournaments to avoid the Sabbath, at least for 2019-20 [school year] and beyond." Dkt. No. 6, ¶¶ 13-14, citing *id.*, Exh. A. He attached a letter dated 02/14/2019 stating "[w]e are asking that you move the 2A state tennis tournament from Friday-Saturday of memorial weekend to weekdays earlier that week or the week after. … We realize it is too late to change the dates for this year but we request that you change it for 2020 and beyond." *Id.*, Exh. A. Dr. Chung states he checked with the Amy Yee Tennis Center and it "is available to host a tournament on May 26-27, 2020," a Wednesday and Thursday. *Id.*, ¶24 & Exh. H.[8]

2.  ***Relevance of Partin's Testimony.*** The request for accommodation in this case is not from WIAA member schools that observe the Saturday Sabbath. It is from 4 individuals who play sports at a public school in Chehalis. If the request were deemed well taken, the WIAA believes the same would be true with any similar request from any student, at any school in the state, in any sport or activity for which the WIAA organizes state championships. C. Adsit Decl.,

---

[7] Three are students there – J.N.C. is a junior, his brother J.D.C. a freshman, and A.A.B. a junior. A.H.B., is in 9th grade at Lewis County Adventist School, Am. Cmplt. ¶25, which only goes to 10th grade (he will then transfer to W.F. West according to his parents). He is eligible to play on the W.F. West tennis team because his present school does not offer the sport. The two minor plaintiffs in high school in the last school year, 2019-20, J.N.C. and A.A.B., did not qualify during their post-season play in Fall 2019 to play in the state tennis tournament scheduled for May 2020. (Tennis is considered a Spring sport. However, a league is permitted to have its tennis season in the Fall, because some member schools want that option in order to have sufficient tennis facilities and/or coaching for boys and girls by staggering their seasons. The league to which W.F. West High School belongs has boys' tennis as a Fall sport. Its sub-District and District tennis tournaments for boys are in October usually. The state tournament is the next May.)

[8] The letter Dr. Chung attached in Exh. H stated that the Amy Yee Tennis Center was not available Friday, May 28, 2020, and additionally that the indoor courts at the facility had very limited seating for spectators. The venue for the 2A state tennis championships for boys and girls has for a long time been the University of Washington's intercollegiate tennis facility, which has substantial seating for its indoor and outdoor courts.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 3

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON  98155-4120
(206) 223-1688

¶6. There are over 40[9] championships "events." Over 400 high schools are members of the WIAA. *Id.,* ¶4. The sports and other interscholastic activities that lead to state tournaments have an estimated 200,000 participants. *Id.*[10]

The plaintiffs cannot contend this case is only about the 2A tennis tournament without contradicting themselves. Their complaint alleges the change that was made to the 1B – 2B state volleyball tournament is a basis for making a similar change to the dates of the state tennis tournament. Am. Cmplt., ¶¶69, 82, 105, 139 & 157. *See also* P. Chung Dep. at 193, l.1 – 194, l. 6. Their economist expert, Luke Fischer, makes the same assertion and additionally contends that the National Association for Intercollegiate Athletics' ("NAIA") moving its cross-country championship meet from a Saturday is a further reason.[11] Plaintiffs also cannot say this case has nothing to do with the other state tennis tournaments. The WIAA has been dealing in 2018 and 2019 with a Saturday Sabbath request of a parent in Medical Lake WA. *See* Am. Cmplt., ¶100. She has two sons who play tennis for a 1A public high school. As her family observes a Saturday Sabbath, she is dissatisfied with the fact that post-season tournaments for her sons' high school (including the Sub-District and District events) have competition on Saturdays. *Id.* Dr. Chung has been in steady communication with this parent and *de facto* made common cause with her. P. Chung Dep. at 178, l.13 – 179, l. 2 & *id.*, Dep. Exhs. 60, 58.

There is in fact no difference between the four minor plaintiffs and any other student-athlete at any Washington high school, public or private, who observes the Saturday Sabbath and

---

[9] The number 40 understates the actual number of championships because it treats as only one event "combination" tournaments where two or more enrollment classifications and both boys and girls are present simultaneously at a single venue, even though each classification and gender has its own championship competition. Counting separately would lead to a total over 120.

[10] Plaintiffs emphasize the substantial size of the Seventh Day Adventist faith in their complaint, stating there are over 21 million persons who belong. Am. Cmplt. (Dkt. No. 34) ¶34. There are, of course, additional students in Washington schools from other religions that also observe the Saturday Sabbath.

[11] Pltfs'. Mo., Exh. 3, App. A at 5-6. At his deposition, Fischer was asked how the present lawsuit would differ from a like request by an individual wrestling, gymnastics or track athlete who observes the Saturday Sabbath. The questions were asked because Mr. Fischer has been an athlete and volunteer assistant coach. He was unable to identify any material differences beyond repeatedly making the tautological statement that those sports are different than tennis and have championships at different venues. L. Fischer Dep. at 37, l. 15 – 45, l. 18.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 4

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

is a wrestler, sprinter, basketball player, football player, or participant in any other interscholastic sport or activity. The result, if plaintiffs' claims are meritorious, would mean no state tournaments could be scheduled on Saturdays,[12] or Fridays.[13]

At trial, the WIAA will present testimony by witnesses from schools and school districts on the harm to schools, students and teachers if state tournaments are moved off Saturdays to weekdays. The most harmful effects will be the extra time out of the classroom for students and teachers (i.e., the coaches who also are on faculty).[14] There will be other bad consequences, which while less impactful than increased out-of-school time, will still be onerous, such as increased costs for schools (the largest of which will be for substitute teachers and increased costs for transportation – primarily buses – when return transportation is shifted from a weekend to a weekday.) Additional harmful effects will be the inability of families, other students and friends in the community (particularly noticeable in the smaller schools outside major metropolitan areas) on getting away to watch tournament competition on a weekday rather than Saturday.

On this motion, the court need not and should not decide the merits of these hardships on schools, teachers and students and whether they are sufficient to override the plaintiffs' claimed right to have competition not occur on the Saturday Sabbath. The WIAA will present evidence on these points at trial. The harmful effects stated above would occur even if just tennis was at issue. They are magnified because other sports and activities are implicated.

---

[12] It would not matter whether any Saturday Sabbath observant students actually qualify for state. The potential would be sufficient. The identities of the qualifiers are for the most part not known until a week to two weeks prior to the tournament when the results of District tournaments become available. C. Adsit Decl., ¶6. State tournaments need to be scheduled much further in advance for purposes of obtaining a suitable venue and other planning requirements of schools, participants and the WIAA. *Id.*

[13] Plaintiffs' position that that other tournaments could be scheduled to conclude on a Friday ignores the fact that in Fall sports and Winter sports sundown is early in the day and getting Friday competition completed before sundown would be unpredictable at best and difficult or impossible at worst. *Id.*, ¶13.

[14] *Id.*, ¶5. The magnitude of increased out-of-classroom time for students and teachers will be even larger because (a) there almost certainly will be a spillover effect on sub-District and District tournaments that now conclude on a Saturday but would likely have to be rescheduled to entirely on weekdays; and (b) many student athletes and teacher-coaches participate in more than one sport or activity during the school year in which they go to postseason competition and potentially a state tournament.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 5

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

There is another serious detrimental effect, which leads the parties to have economists as expert witnesses. It is the decreased attendance, and resulting decreased revenue from ticket sales, that would occur if tournaments are rescheduled to not conflict with the Saturday Sabbath. The decreased attendance on weekdays, as compared to Saturdays has been well observed in multi-day state tournaments as they presently exist. *Id.*, ¶¶15-16. It will be testified to by WIAA staff that organize the tournaments and/or keep track of the ticket sales figures, and by athletic directors or other witnesses from the schools who regularly attend state tournaments. The purpose of William Partin performing an analysis was to quantify the loss that could be expected if there was a shift of tournament competition to weekdays. This is not to establish a damages claim. It is to show the loss would be substantial. While this is not the most important harm — compared to increased out-of-classroom time for students and teachers —it is still significant.[15] The tournament revenues support the costs of putting on the tournaments. If the revenue were lost, it would have to be made up by the schools and school districts (which already pay fees to be members of the WIAA) and/or by reducing the quality of the tournaments.[16]

Plaintiffs do not dispute that the interests of the WIAA and its member schools in scheduling state tournaments on Saturdays are relevant, nor could they.[17] They do argue that apart from 2A tennis, which is the only sport they participate in, no other sport or interscholastic activity should be examined. Their purported legal support is *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006), which is cited in *Nance v. Miser*, 700

---

[15] Partin concluded the total loss from reduced ticket sales would be over $500,000, which would be augmented by consequential loss in merchandise and program sales. Pltfs. Mo., Exh. 1, App. A at 11.

[16] Tickets are not sold to state tennis tournaments because entry cannot be controlled to the venues' outdoor courts. But they are sold for the large majority of the tournaments in the other sports.

[17] See Am. Cmplt., Dkt no. 34, ¶¶ 108-09, 113, 136, 142-43 (alleging the "compelling interests" standard is the test under plaintiffs' constitutional claims before state tournaments can be scheduled during the Saturday Sabbath; *Id.*, ¶¶154, 160 (asserting "undue hardship" to the WIAA test for statutory claims). The WIAA points out that while its interests and those of its member schools are compelling, it does not agree with plaintiffs' allegation in the complaint that the constitutional standard applicable to their claims in this case requires that interests rise to that level. As plaintiffs do not directly brief the standard applicable to their constitutional claims, it is not necessary to discuss it in this opposition.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 6

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

Fed.Appx. 629, 632-33 (9th Cir. 2017), *see* Pltfs. Mo. at 6. But those two cases (a) deal with statutory claims under two federal statutes not at issue in the present case[18]; and (b) do not address evidentiary standards and in particular do not discuss relevance under FRE 402, 403 or 702.

More importantly, in each of the two cases, the plaintiff was seeking to be treated as an *"exception"* under the command of the RFRA or RLUIPA, from a rule of general applicability that otherwise would have proscribed their possessing or using certain substances necessary to their faith. The plaintiff there was not seeking to invalidate the rule. This is clear from the Supreme Court's discussion in *Gonzales* in the sentence following the quotation by the present plaintiffs: "But RFRA operates by mandating consideration, under the compelling interest test, of **exceptions** to 'rule[s] of general applicability." 546 U.S. at 436 (boldface added). In contrast, the present 4 minor plaintiffs are not seeking an "exception" for themselves individually. They seek invalidation of the WIAA's policy for scheduling state competition, which even if directed only at tennis as plaintiffs urge, still directly affects far more persons than just the 4 plaintiffs. There are 386 students competing in the state tennis championships as a whole, 96 of them in the 2A championship, plus the coaches/teachers and schools involved. C. Adsit Decl., ¶14. WIAA submits that two federal statutes, not at issue in this case, that are directed at "exceptions" which (if granted) would affect only the aggrieved plaintiff in *Gonzales* and in *Nance,*, do not establish the substantive standards for this case, much less any evidentiary standards for this case.

The one other case cited by plaintiffs, *Opuku-Boateng v. State of Cal.*, 95 F.3d 1461 (9th Cir. 1996), as purported grounds to not consider other sports, is no more apposite than *Gonzales* or *Nance*. That decision is addressed to the substantive sufficiency of proof on summary

---

[18] *Gonzales* addresses a claim under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1(b). *Nance*, which relies on Gonzales, addresses a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc-1(a).

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 7

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON  98155-4120
(206) 223-1688

judgment, in a statutory employment discrimination claim under Title 7 of the 1964 Civil Rights Act. It does not purport to address evidentiary rules, including relevance.

3. *Unfounded Criticisms of Partin's Work.* Following their argument that sports other than tennis should be ignored, plaintiffs criticize certain aspects of Partin's work. Importantly, Plaintiffs make no fundamental challenge to Partin's method, which is a regression analysis of ticket sales data, day by day, for the four-day basketball tournament, a standard statistical approach. Pltfs. Mo., Exh. 1, App. A (Partin report) at 8-9; & Attachment 7; *see generally id.*, at 5-10. This is not a motion where Plaintiffs accuse Partin of using methods outside of those widely recognized by economists on accounting professionals. Plaintiffs' criticisms go to lesser points. None are grounds for exclusion of his opinions. They are not valid. While plaintiffs disagree, they have the ability to cross-examine and to argue weight at trial.

A. *Why More Than a One-Day Shift in Tournament Dates Was Used.* Plaintiffs say Partin did not consider Fridays as a day for concluding tournaments, i.e. a one-day shift. But testimony at trial will establish that sports with Fall tournaments (in late November or early December) or Winter tournaments (in late February or early March) would likely have Friday competition going past sundown. C. Adsit Decl., ¶13. (Even tennis could have that happen -as could other Spring tournaments - if there are inclement weather delays.) Plaintiffs did not ask for a move of the state tennis tournament to Thursday-Friday, but rather to "weekdays earlier that week" than the Friday-Saturday dates; and when they proposed dates for a tournament in May 2020 at Amy Yee Tennis Center, the dates were on a Wednesday-Thursday. *See supra* at 3-4.[19] Partin was therefore asked to analyze a shift of at least two days in tournament dates.

---

[19] An additional problem with plaintiffs' suggestion now of concluding on Friday is that the make-up day for a contest postponed by inclement weather is the "next playable date". *See* WIAA Rule 22.6, Exh. 5 to S. Rockey Decl. Currently, the next day is Sunday, but it would become Saturday under any proposal by plaintiffs to have tournaments conclude on a Friday. Not infrequently there is an actual or threatened weather postponement to the next day in baseball, fast pitch, and slow pitch softball. (It can also occur in soccer or tennis or track.) It can come up in even in indoor sports because severe inclement weather can delay travel across the state to get to a tournament. *Id.*

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 8

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

B. *Use of Extensive Basketball Data.* Plaintiffs have multiple criticisms of Partin's use of basketball ticket sales data. Partin used basketball sales figures because basketball has by far the most extensive data covering several days of the week, with its four-day tournaments. Plaintiffs say the WIAA already accommodates the Saturday Sabbath in basketball and "[i]t defies logic to suggest that moving the tennis tournament ... would require WIAA to move other tournaments that already accommodate Sabbath observing entrants. So Partin's 'assumption[]' is not only legally irrelevant but lacks any factual foundation in the record.'" Pltfs. Mo. at 7. However, the accommodation the WIAA makes in setting the start time of an individual basketball game is granted to a limited number (7) of religiously affiliated schools in the 1B and 2B classifications if any of those schools qualify for the state tournament. It does not change the tournament dates and is not granted for an individual player in basketball at any school.[20]

Plaintiffs say family, friends and acquaintances of the student-athletes on the field or court are the most likely attendees at an event, but they assert this is less true of basketball and more true of tennis. Pltfs. Mo. at 9. They offer no quantitative or qualitative evidence beyond the subjective assertion (that it's "likely less true [for] other sports" than tennis) by their expert (id., Exh. 3, App. A at 9). But it does not matter since tennis does not have ticket revenue, and so does not contribute to the loss calculated by Partin. The main revenue producing tournaments are basketball (1st by far) and football (2nd by a large margin). Pltfs. Mo., Exh. 1, App. A at 5; Decl. of W. Partin dated September 21, 2020, ¶3. Furthermore, the plaintiffs' supposition that basketball attendees differ greatly from family, friends and acquaintances of the student athletes is repeatedly contradicted by the article they submitted (Pltfs.' Mo, Exh. 7[21]). Partin also disagrees with plaintiffs' supposition. W. Partin Dep. (Pltfs. Mo., Exh. 2) at 50, ll.4-25.

---

[20] Interestingly, plaintiff Richard Boggess, parent of A.A.B. and A.H.B., was a high school basketball athlete in Oregon in the 1980s – recruited by his coach and voted Captain of his team. He sat out half of the games however, being willing to play only the Tuesday night games, not those on Friday night. R. Boggess Dep. at 26, l.16 – 27, l. 8.

[21] See Pltfs. Mo., Exh. 7, at 94 ("[w]hen considering high school basketball, people most likely to attend are those related

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 9

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

Plaintiffs assert Partin should not use "fall-off" rates in tournament basketball attendance seen going backward in the week to determine the reduction in all sports that charge for tickets. But basketball itself supplies 40% of the WIAA's revenue from such sales. Basketball also had the most extensive data set to analyze, having sales on days going back to Thursday and Wednesday. The fall-off rates seen in the much more limited Friday and Saturday data available for football and baseball were consistent. If they were applied to a two (or more) day shift of those tournaments, despite the scarcity of data to look at earlier days in the week, the loss of revenue would not be materially different.[22] W. Partin Decl., ¶6.[23]

C. *Purported Other Consumer Preferences.* Plaintiffs assert that, despite the drop-off in attendance that is physically observed by persons at numerous tournaments[24] and quantitatively seen by standard statistical methods, Partin is to be faulted for not unequivocally establishing that a "consumer preference" based on the day of the week is the only possible cause. They do this despite common sense (that people have jobs on weekdays). Plaintiffs can cross-examine on this, of course. Partin's regression analysis inherently takes into account other consumer preferences (including for championship games) that may exist. W. Partin Decl., ¶4.[25] Conspicuously,

---

to the student body (e.g. student athletes) of a high school (family, friends, students and faculty/staff)"); *id.*, at 93 ("[f]amilies and community members often choose to travel to the regional and state championship games to support the student athletes"); *id.*, at 101 ("[i]ntuitively event participants (e.g., athletes, cheerleaders, coaches…) and their families, friends and affiliated schools, residential areas, and athletic conferences would be interested in attending the tournament events.").

[22] Plaintiffs say the Gridiron Classic (football) has a 23% fall-off, or one-day rate-of-decrease, Saturday to Friday while the state basketball tournament is 5% higher at 28%, Pltfs. Mo. at 10, which is not large anyway and also ignores the football games being at night on Fridays while the state basketball tournament has numerous games throughout the workday on Fridays. Plaintiffs also suggest Partin characterized all, or most, sports besides basketball as "less 'mainstream'" than basketball, *id.*, even though the cited deposition testimony was directed only at volleyball, and there just for the smallest classification schools. W. Partin Decl., ¶10.

[23] Plaintiffs also contend that the drop-off in volleyball ticket sales was not large when one state volleyball tournament, Pltfs. Mo. at 10, the smallest one in terms of school size, was partially moved in 2017 to Thursday-Friday. Only the competition for 1B and 2B schools was shifted (the larger 1A schools at the same venue still played on Friday-Saturday). The drop-off (based on the 3-year average of ticket sales) was 5.6%, still significant. C. Adsit Decl., ¶16; W. Partin Decl., ¶9. It presumably would have been larger if the 1A schools were shifted also, but keeping them on Friday Saturday was necessary to getting a religiously affiliated Saturday Sabbath school's games, if such a school was still playing on Friday, started early in the day since the 1A games could be pushed back to the evening.

[24] WIAA submits Cindy Adsit's declaration (she is the longest serving WIAA employee) on this point presently, but at trial there will be several witnesses from schools with extensive experience at the tournaments (e.g., Athletic Directors), in addition to WIAA witnesses, to testify on lower attendance during weekdays.

[25] Nor did the academic article plaintiffs submitted (Pltfs. Mo. Exh. 7) state there was such a preference. The fact that the

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 10

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

plaintiffs' rebuttal expert did not assert (much less develop quantitative analysis) that preference for championship games only was an alternative cause, (*see Pltfs. Mo., Exh 3, App. A*), as plaintiffs' motion now seems to argue, and the plaintiffs do not provide any other evidence for it.

Plaintiffs argue the 9th Circuit "routinely" excludes "expert testimony that "fails to address and exclude alternative explanations for the data." Pltfs. Mo. at 11. "Routinely" is an exaggeration given the holdings that rejected similar arguments in *Salas v. Toyota Motor Sales USA, Inc.*, 2017 WL 11247885 (C.D. Cal. 2017)[26]; and *Lewert v. Boiron, Inc.*, 212 F.Supp.3d 917, 929 (C.D. Cal. 2016).[27] Second, one of the two cases plaintiffs cite does not discuss "exclud(ing) alternative explanations."[28] The second case was a highly technical patent infringement action involving recombinant DNA and a biochemistry expert, in which the court pointed out the fundamental defect "there is no evidence that his method of reinterpretation is practiced by even a minority of scientists in this field" and then listed 8 factors for that conclusion. Not "ruling out" alternative explanations was well down the list and there was no suggestion that it, by itself, would have created the fundamental failure to be outside accepted methodology in the field, or would have sufficed on its own to exclude the expert's testimony.[29]

---

article emphasized repeatedly that families of the basketball players comprise the base of the fan pool, *see supra n.* 21, strongly suggests the opposite, since most of the players in the tournament do not reach the final game.

[26] The *Salas* court held that "[m]ost of defendants' arguments regarding the admissibility of [engineer] Okcuoglu's testimony and opinions go to the weight rather than the admissibility .... Okcuoglu was not required to rule out other causes of the HVAC odor.", *Id.* at *5, n.9, citing *Victorino v. FCA US, LLC*, 2017 WL 2578794, *11 (S.D. Cal. 2017) (which per the *Salas* court's description "rul[ed] that [the] expert's failure to investigate or rule out other causes of the clutch issue could be addressed during questioning at trial").

[27] The *Lewert* court declined to exclude expert testimony in a class action against a drug manufacturer and noted "[d]efendant's critique would apply only if there were obvious alternative explanations for the dilution data that Dr. Kurdistani considered or if there were obvious alternative explanations for why the poor clinical trials that he reviewed were sound[,] [d]efendants have not made either showing, however...." *Id.*, 212 F.Supp. at 919.

[28] *See Grodzitsky v. Am. Honda Motor Co.*, 957 F.3rd 979, 994-97, cited in Pltfs. Mo. at 11.

[29] *See Carnegie Mellon University v. Hoffman-LaRoche, Inc.*, 55 F.Supp.2d 1024, 1034-35 (N.D. Cal. 1999). A third case *Cloor v. Burlington R.R. Co.*, 29 F. 3rd 499 (9th Cir.1994), which plaintiffs cite elsewhere (Pltfs. Mo. at 8) involved two doctor experts who admitted professional standards required they rule out certain other causes of the plaintiff's injuries (beside chemical exposure), which they had not done. *Id.* at 502. This is a factor not present here.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 11

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON  98155-4120
(206) 223-1688

4.   *Absence of Unfair Prejudice.* Plaintiffs argue Partin's testimony would cause "unfair prejudice." Pltfs. Mo. at 12. The nature of Partin's economic testimony is not such as to arouse passion. Plaintiffs apparently assume the 4 minor plaintiffs' claim, which is solely for injunctive relief on future tournament scheduling, will be tried to a jury, not the court. A jury would not be unfairly swayed by Partin's testimony in any event, and certainly not the court.

Plaintiffs cite to *U.S. v. Gonzalez-Flores, Id.,* 418 F.3d 1093, 1099 (9th Cir. 2005), Pltfs. Mo. at 12, but it is entirely inapposite. It was a criminal case where evidence of the victims' heat stroke was introduced. The court noted the victims' "young age and dire condition" (requiring "resuscitation by rescue breathing") could "very well have triggered an emotional response" from jurors; and further pointed out the evidence did "not go to an element of the charge." *Id.,* 418 F.3rd at 1098-1099. Here, there is no emotional content or trigger; and the issues of "compelling interests" and "undue hardship" of the WIAA and the schools, which include major revenue loss, are central to elements of plaintiff's claims and the WIAA's defenses to them.

5.   *Conclusion.* For the reasons stated above, plaintiffs' motion *in limine* should be denied.

RESPECTFULLY SUBMITTED this 21st day of September, 2020.

ROCKEY STRATTON, P.S.

*/s/Steven A. Rockey*
Thomas C. Stratton, WSBA 14545
Steven A. Rockey, WSBA 14508
Attorneys for Defendant Washington
   Interscholastic Activities Association

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 12

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON 98155-4120
(206) 223-1688

## CERTIFICATE OF SERVICE

I certify that service of a copy of the foregoing document to which this certificate is attached is being made on the 21st day of September, 2020, by (a) sending the same electronically to the plaintiffs' attorneys of record in this case, through the court's ECF electronic filing and service system to the plaintiffs' attorneys of record in this case, and via private email addressed to them.

DATED this 21st day of September, 2020.

ROCKEY STRATTON, P.S.

/s/*Steven A. Rockey*
Steven A. Rockey, WSBA 14508
Attorney for Washington Interscholastic
 Activities Association
3010 NE 182nd Street
Lake Forest Park, WA 98155-4120
(206) 223-1688
stever@erslaw.com

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE- 13

wich-p-MM of Dt in Opp to Pls' MOSIL

ROCKEY STRATTON, P.S.
ATTORNEYS AT LAW
3010 NE 182ND STREET
LAKE FOREST PARK, WASHINGTON  98155-4120
(206) 223-1688