UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHUNG, ET AL.,

                Plaintiffs,

    v.

WASHINGTON INTERSCHOLASTIC
ACTIVITIES ASSOCIATION,

                Defendant.

CASE NO. C19-5730-RSM

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

## I.      INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment. Dkt.

#53. Defendant Washington Interscholastic Activities Association ("WIAA") opposes Plaintiffs'

Motion. Dkt. #57.[1] The Court has determined it can rule on this Motion without oral argument.[2]

---

[1] The Court strongly disfavors footnoted legal citations as they "serve as an end-run around page limits and formatting requirements dictated by the Local Rules" and make it more challenging for the Court to review the brief. *Rosario v. Starbucks Corp.*, No. C16-01951RAJ, 2017 WL 4122569, at *1 (W.D. Wash. Sept. 18, 2017); *see* Local Rules W.D. Wash. LCR 7(e). The Court strongly discourages Defendant from footnoting its legal citations in future submissions.

[2] Plaintiffs request oral argument. However, "[w]hen a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in a refusal to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (internal quotations omitted). Here, the issues have been thoroughly briefed by the parties and oral argument would not be of assistance to the Court. *See also* LCR 7(b)(4).

Having considered Plaintiffs' Motion, WIAA's Response, Plaintiffs' Reply, the declarations and exhibits attached thereto, and the remainder of the record, Plaintiffs' Motion is DENIED.

## II.    BACKGROUND

Joelle Chung and her brothers J.N.C. and J.D.C., and their teammates A.H.B. and A.A.B., bring this action against the WIAA under the Free Exercise Clause and Equal Protection Clause of the U.S. Constitution, the Washington State Constitution, and RCW § 28A.600.200 for failure to accommodate Sabbath observers in its scheduling and administration of high school tennis state championship tournaments.  Dkt. #34.  Plaintiffs are current and former students at William F. West High School ("W.F. West") and Seventh-day Adventists who observe the Sabbath each week.  *Id.* at ¶¶ 1-11.  Observing the Sabbath requires that Plaintiffs rest from work and refrain from competitive sports from sundown Friday until sundown Saturday every week.

The WIAA is an organization authorized under Washington state law to schedule and oversee interscholastic sports and activities in the state.   Dkt. #59 at ¶ 3.  Through its thirteen-member Executive Board and Representative Assembly, the WIAA establishes and interprets rules for interscholastic sports in Washington, including the sites, dates and rules for postseason play for WIAA member schools.  *Id.*  Before the postseason state championship, competitions are organized by individual leagues and schools around the state.  In Washington, over 400 public and private high schools are members of the WIAA.  *Id.* at ¶ 4.

Each tennis season, the top performers from the boys' and girls' tennis teams at W.F. West are selected to compete in postseason competition culminating in a state championship tournament. Tennis postseason includes sub-district, district, and finally, state.   Dkt. #34 at ¶¶ 44-45.  The top three girls, boys, and doubles teams from W.F. West are selected to advance to state.  *Id.* at ¶ 46. Under former WIAA Rule 22.2.5, each member school certified that for postseason competition,

"barring injury, illness, or unforeseen events, the team or individuals representing the school will participate in every level of competition through the completion of the state championship event." Dkt. #54-24 at 49. In turn, WIAA Rule 22.2.6 provides that "[a]ny withdrawal and intentional forfeiture shall be considered a violation of WIAA rules and regulations, and shall be subject to penalties as determined by the WIAA Executive Board." *Id.*

During the 2017-2018 season, Joelle was selected for postseason competition. Dkt. #5 at ¶ 11. After advancing from sub-districts, she had to withdraw from the district tournament because it was scheduled on Saturday. For the 2018-2019 season, because Joelle expected to qualify again for postseason, she and the Chung family preemptively asked WIAA for an accommodation. Specifically, the Chungs asked that WIAA "change rule 22.2.5 to allow religious observances as a valid reason to drop out of the tournament" so Sabbatarians "can play as far as they are able until Sabbath becomes an issue." Dkt. #54-1 at 10. Additionally, they asked that WIAA "move the 2A state tennis tournament" to weekdays. *Id.* Joelle qualified for postseason competition. However, while the sub-district and district competitions were scheduled outside the Sabbath, the state tournament was scheduled for Friday and Saturday. Consequently, if Joelle advanced to the state championship, she would not have played the final day.

On April 23, 2019, WIAA rejected Joelle's request to preemptively withdraw from the state tournament in the event that she advanced to the final round. Dkt. #54-1 at 18. WIAA stated that withdrawal based on an anticipated Sabbath conflict would "violate [] specific WIAA rules and cannot be granted." *Id.* WIAA explained that withdrawal due to Sabbath conflict would be (1) unfair to athletes who would have qualified but for the withdrawing athlete, and (2) create a competitive advantage for the athlete scheduled to play the athlete who forfeited. *Id.*

On August 6, 2019, the Chungs filed this lawsuit on behalf of Joelle and J.N.C. seeking

compensatory and nominal damages for WIAA's failure to accommodate Sabbath observers in scheduling postseason tournaments and in their application of Rules 22.2.5 and 22.2.6 regarding withdrawal from postseason play. Dkt. #1. Plaintiffs also sought declaratory and injunctive relief requiring WIAA to permit religious withdrawals under Rule 22.2.5 and to schedule the 2A tennis tournament to accommodate Sabbath observance.

On August 27, 2019, WIAA amended Rule 22.2.5 to permit withdrawals for "religious observance." Dkt. #27 at ¶ 5. Plaintiffs filed an amended complaint on December 20, 2019, adding minor Plaintiffs J.D.C., A.A.B., and A.H.B. Dkt. #34. The amended complaint claims that WIAA violated Plaintiffs' free exercise and equal protection rights under the U.S. Constitution for (1) scheduling the 2A tennis tournament on Plaintiffs' Sabbath; and (2) prohibiting Joelle from withdrawing from postseason play for religious reasons under Rules 22.2.5 and 22.2.6. It also claims violations of art. 1 § 11 of the Washington State Constitution and RCW § 28A.600.200(1). Plaintiffs seek an award of compensatory damages and $100 in nominal damages to Joelle, a declaration of Plaintiffs' rights under the First and Fourteenth Amendments, the Washington Constitution, and RCW § 28A.600.200, and a permanent injunction barring WIAA from scheduling any 2A Boys State Tennis matches on Saturday for which any of the minor Plaintiffs qualify and barring WIAA from enforcing its rules to prohibit Plaintiffs' withdrawal from postseason competition due to religious observance.

On September 29, 2020, Plaintiffs filed the instant Motion for Summary Judgment on their claims under the Free Exercise Clause, the Washington State Constitution, and RCW § 28A.600.200. Dkt. #53. Plaintiffs' Motion also contains a cursory reference to their Equal Protection claims. *See id.* at 20, n.6. WIAA opposes Plaintiffs' motion in its entirety. Dkt. #57.

//

# III.    DISCUSSION

## A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, (1986). Material facts are those which might affect the outcome of the suit under governing law. *Id.* at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy,* 365 F.3d 827, 832 (9th Cir. 2004). However, the non-moving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party fails to properly support an assertion of fact or fails to properly address the moving party's assertions of fact, the Court will accept the fact as undisputed. Fed. R. Civ. P. 56(e). As such, the Court relies "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1278–79 (9th Cir. 1996) (quotation marks and citations omitted). The Court need not "comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

//

### B. Standing for Minor Plaintiffs

As a threshold issue, WIAA argues that the minor Plaintiffs lack standing to challenge WIAA's future scheduling of Saturday tournaments. Dkt. #57 at 12. WIAA contends that none of the minor Plaintiffs have qualified for a state tournament, and since it is speculative to assert that they will qualify, their claims "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *A Woman's Friend Pregnancy Resource Clinic v. Harris*, 153 F. Supp. 3d 1168, 1188 (E.D. Cal. 2015)) (internal citations omitted). Furthermore, WIAA argues that Plaintiff J.N.C. previously claimed he *would* play in a Saturday match if he advanced to state. Dkt. #57 at 12. Because minor Plaintiffs fail to satisfy the injury-in-fact prong due to the speculative nature of their injury, the Court need not reach WIAA's arguments regarding J.N.C.'s previous statements.

Where a summary judgment motion is based on standing, a plaintiff must make "a factual showing of perceptible harm." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 566 (1992). In a challenge to standing, the party seeking to invoke federal jurisdiction bears the burden of showing that jurisdiction is proper. *See Unigard Ins. Co. v. Dept. of Treasury,* 997 F. Supp. 1339, 1341 (S.D. Cal. 1997) (citing *Thornhill Publishing Co. v. Gen. Tel. & Electronics Corp.,* 594 F.2d 730 (9th Cir. 1979)). For the reasons set forth below, the Court finds that Plaintiffs have failed to meet their burden to show that minor Plaintiffs have standing to pursue injunctive relief.

Pursuant to Article III of the U.S. Constitution, federal courts are courts of limited jurisdiction, hearing only live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2. To satisfy the case-or-controversy requirement, the plaintiff must establish "(1) [A]n 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Furthermore, "a plaintiff must demonstrate standing separately for each form of relief sought." *Id.* at 185 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

Minor Plaintiffs seek prospective injunctive relief in the form of rescheduling the state tournament so that no play takes place between Friday sundown and Saturday sundown, and enjoining WIAA from enforcing its rules to prohibit Plaintiffs from withdrawing from postseason competition due to religious observance. Dkt. #34 at 25. Plaintiffs argue that they need not prove they will qualify for state given that their injury in fact is "the inability to compete on an equal footing" from the start. Dkt. #77 at 3-4 (citing *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017)) (quoting *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993)). The Court finds these cases inapplicable to the present facts. *Trinity Lutheran* addressed a state policy excluding religious organizations from participating in a state-run program that offered reimbursement grants to organizations for certain playground renovations. *Id.* The Supreme Court concluded that the injury in fact was not the denial of the grant "but rather the refusal to allow the Church—solely because it is a church—to compete with secular organizations for a grant." *Id.* (citing *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993)).

Here, in contrast, minor Plaintiffs are not barred from participating in competition altogether. Rather, the WIAA's amendments to Rules 22.2.5 and 22.2.6, which added "religious observance" to the list of reasons for players to withdraw from postseason play, allow minor Plaintiffs to compete until a scheduled tournament conflicts with their Sabbath observance. Dkt.

#34 at ¶ 97.  For the 2020-21 and 2021-22 postseason schedules, this conflict would only occur if Plaintiffs were to reach the state championship tournament.  *Id.* at ¶ 97.  Consequently, the injury inflicted by WIAA's scheduling policy—barring Plaintiffs from competing with players who do not observe the Sabbath—is conditioned on minor Plaintiffs reaching the state championship.  Plaintiffs are therefore only barred from competing "on equal footing" with non-Sabbath observing players if they advance to state.  *Cf. Trinity Lutheran*, 137 S. Ct. at 2022.  For that reason, minor Plaintiffs' likelihood of reaching the state championship event is central to the standing inquiry.

Plaintiffs also argue that they need only show a "reasonable probability" that WIAA's action will harm the minor students' concrete interests.  Dkt. #77 at 4 (citing *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1161 (9th Cir. 2017).  However, the "less demanding" standard for injury-in-fact set forth in *Navajo Nation* applies to injury from procedural harm, meaning the injury inflicted by an administrative agency as a result of failing to follow their own procedural rules.  *Navajo Nation*, 876 F.3d 1144, 1161 (9th Cir. 2017) (quoting *Hall v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001)).  This standard is more relaxed than the test for injury-in-fact for alleged substantive injuries.  *See id.* ("Where plaintiffs allege a 'procedural injury'—that is, that the government's violation of a procedural requirement could impair some separate interest of the plaintiffs'—the 'normal standards for . . . [the] immediacy' of injury are relaxed.") (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 572 n.7 (1992)).  Here, minor Plaintiffs are not alleging a procedural injury inflicted by WIAA.  Rather, they claim that WIAA's scheduling policy inflicts substantive harm by preventing them from competing in the state championship tournament.  For that reason, to have standing to bring their claims, Plaintiffs must demonstrate that their injury is

"actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc.*, 528 U.S. at 180–81 (2000).

The Court finds that minor Plaintiffs have failed to meet this more exacting standard. It cannot conclude from the record that minor Plaintiffs' injury, based on WIAA's scheduling of future state championships on the Sabbath, is actual or imminent as opposed to merely hypothetical. Plaintiffs rely exclusively on statements from Plaintiffs' coach that W.F. West's team is likely to qualify for postseason competition in the future. *See* Dkt. #54-15 at 109-:11-113:18. (Stating that W.F. West's team for the 2020-21 season is "the best [he's] ever had" in 47 years of coaching, he is "sure" Plaintiffs "will qualify for the postseason," that J.N.C. is "among the favorites of making it to state," and that A.H.B. is "talented" enough to do so even in this his freshman year). While the coach speaks optimistically about his players, particularly A.H.B. and J.N.C., his complete testimony does not convey any level of certainty regarding their likelihood of advancing to state. *See id.* at 111:10-15 ("I would anticipate that A.H.B. and his partner will be undefeated . . . [a]nd I think they have a very good shot of going to district *and an outside chance of making it to state, an outside chance, maybe quite a ways outside but still a chance*.") (emphasis added). When asked whether J.D.C. would qualify for postseason, the coach stated, "[A] lot for J.D.C. will be where his head is." *Id.* at 113:4-8. The Court cannot conclude that these statements, on their own, are sufficient to demonstrate minor Plaintiffs' likelihood of qualifying for state such that they face actual or imminent injury from WIAA's scheduling decisions regarding the state tournament.

In addition to the speculative nature of whether minor Plaintiffs will advance to state, the cancellations and postponements of sports competitions caused by the COVID-19 pandemic inject additional uncertainty into the injury-in-fact inquiry. Indeed, WIAA rescheduled the 2021

state tournament with "no indication that [it] will be rescheduled." Dkt. #79 at 2. WIAA instead paired athletic districts into regions with their own culminating events. Dkt. #79-1 at ¶¶ 3-4. While Plaintiffs insist that relief "remains necessary for the remaining seasons of Plaintiffs' careers," Dkt. #79 at 3, the Court finds that the uncertainty that minor Plaintiffs will qualify in future seasons, magnified by the uncertainty of whether state tournaments will be held in the same format due to the ongoing COVID-19 crisis, make their alleged injury merely speculative as opposed to actual or imminent.

Having concluded that the minor Plaintiffs lack standing, the Court now turns to whether WIAA's rules as applied to Joelle Chung—the scheduling of tournaments on a Saturday and application of Rules 22.2.5 and 22.2.6—violated her rights under the Free Exercise clause. The Court will address each claim in turn.

## C. Scheduling Tournaments on a Saturday

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof.*" U.S. Const., amend. I. (emphasis added). The Free Exercise Clause is made applicable to States through the Fourteenth Amendment. *Cantwell v. State of Conn.*, 310 U.S. 296, 303 (1940). As the U.S. Supreme Court affirmed in *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* ("*Lukumi* "), 508 U.S. 520, 531 (1993), a neutral law of general application need not be supported by a compelling government interest even when "the law has the incidental effect of burdening a particular religious practice." Such laws need only survive rational basis review. *Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir. 1999). For laws that are not neutral or not generally applicable, the more exacting standard of strict scrutiny applies. *See Lukumi,* 508 U.S. at 531–32 ("A law

failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.").

  *i.*  *Standard of Review*

  The Court first addresses the question of whether WIAA's scheduling of the 2A tennis tournament on the Sabbath is subject to rational basis or strict scrutiny review. The tests for neutrality and general applicability "are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 (9th Cir. 2015) (quoting *Lukumi*, 508 U.S. at 531) (internal quotations omitted). When assessing whether a rule is neutral and generally applicable, courts "must consider each criterion separately so as to evaluate the text of the challenged law as well as the 'effect . . . in its real operation.'" *Id.* (quoting *Lukumi*, 508 U.S. at 535). Whether a law is neutral and generally applicable is a mixed question of law and fact. *Stormans, Inc. v. Selecky*, 854 F. Supp. 2d 925, 966 (W.D. Wash. 2012), *rev'd on other grounds*, *Stormans, Inc. v. Wiesman*, 794 F.3d 1064 (9th Cir. 2015).

  A law is not neutral if its object "is to infringe upon or restrict practices because of their religious motivation . . . ." *Id.* (quoting *Lukumi*, 508 U.S. at 533). "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. at 533. Here, WIAA's decision to schedule the state tournament on Saturday makes no reference to any religious practice, conduct, belief or motivation. For that reason, the WIAA's scheduling decision is facially neutral. *Wiesman*, 794 F.3d at 1076. However, the question remains as to whether WIAA's scheduling policy is operationally neutral, meaning it operates in a way that burdened Joelle's ability to freely observe the Sabbath.

Plaintiffs argue that WIAA's decision to schedule the 2A tennis tournament on the Sabbath is not neutral or generally applicable because it was undertaken "under a system of 'individualized governmental assessments.'" Dkt. #53 at 13 (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 884 (1990)). The "individualized exemptions" doctrine invoked by Plaintiffs was developed in a series of cases addressing the eligibility of persons for unemployment benefits should they fail to accept available employment "without good cause." *See Sherbert v. Verner,* 374 U.S. 398, 402–10 (1963) (finding denial of benefits unconstitutional where state determined that claimant's religiously-motivated refusal to work on Saturday was "without good cause"); *Hobbie v. Unemp't Appeals Comm'n,* 480 U.S. 136, 140–46 (1987) (same); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.,* 450 U.S. 707, 717–18 (1981) (finding denial of unemployment benefits unconstitutional where state determined that claimant's voluntary, religiously-motivated termination of employment in armaments production was "without good cause"). Under *Sherbert* and its progeny, the Supreme Court determined that "an open-ended, purely discretionary standard like 'without good cause' easily could allow discrimination against religious practices or beliefs.'" *Wiesman*, 794 F.3d at 1081 (citing *Sherbert,* 374 U.S. at 406); *see also Lukumi,* 508 U.S. at 537–38.

However, since the *Sherbert* line of cases, the Supreme Court has limited the individualized exemption doctrine. *Id.* In *Smith*, it refused to extend its reasoning under *Sherbert* to a criminal prohibition on the use of peyote that could disqualify someone from receiving unemployment benefits. *See* 494 U.S. at 882–85 (finding that reasoning of *Sherbert, Thomas,* and *Hobbie* had "nothing to do with an across-the-board criminal prohibition on a particular form of conduct"). It explained that the individualized exemption doctrine was "developed in a context

1   that lent itself to individualized governmental assessment of the reasons for the relevant conduct."

2   *Id.* at 884.

3       Here, Plaintiffs identify WIAA's handbook as evidence of WIAA's "unfettered and purely

4   discretionary authority" to schedule tournaments on Saturday.  The handbook states that WIAA

5   is charged with establishing a yearly calendar of events "including the beginning and ending dates

6   for each sport or activity season" and for determining "allocations, management, sites, dates,

7   formats, schedules and rules and regulations for Regional and State events[.]"  Dkt. #54-21 at 15.

8   Plaintiffs argue that WIAA's broad discretion is evidenced by the fact that the handbook provides

9   no "particularized or objective criteria" by which it decides when to schedule postseason

10  competition.  Dkt. #53 at 16.

11      The Court finds that WIAA has raised a material dispute of fact as to whether its

12  scheduling policy amounts to a system of individualized exemptions such that strict scrutiny must

13  apply.  First, although the criteria are not set forth in the handbook, WIAA asserts that several

14  "particularized, objective criteria" govern its scheduling decisions for postseason competition: (1)

15  minimizing the amount of time students, teachers, coaches, and athletic directors are out of the

16  classroom; (2) reducing school expenses associated with the event such as the cost for substitute

17  teachers and transportation; (3) increasing the opportunity for students, friends and community

18  supporters to attend the events; (4) increasing revenue for due to higher ticket sale prices on

19  Fridays and Saturdays; (5) increasing the ability to hire officials who have day jobs; (6) easily

20  obtaining competition venues, which are more accessible on the weekends for high school venues;

21  and (7) maintaining the "tournament atmosphere" for the event by maximizing audience

22  attendance.  Dkt. #58 at ¶ 23; Dkt. #60 at ¶ 7.  Guided by these criteria, WIAA typically schedules

23  its single-day tournaments on Saturday and its two-day tournaments on Friday and Saturday.  Dkt.

#59 at ¶ 5. While Plaintiffs dismiss these reasons as "*post hoc* justifications," Dkt. #77 at 6, the question of whether WIAA developed its scheduling policy around these criteria is a question of fact reserved for the jury.

Plaintiffs also argue that the criteria are dubious given that no competitions are scheduled for Sunday, despite WIAA's stated goal of reducing missed school time and enabling more friends and family to attend portions of the competition. Dkt. #53 at 16. However, WIAA explains that its policy of not scheduling competition on Sunday serves a purely secular purpose: Sunday is reserved as a travel-back day, considering the possibility of hazardous road conditions or long-distance travel through mountain passes, and may also serve as a makeup day if competition is postponed by bad weather. Dkt. #57 at ¶¶ 5, 18. The Court finds WIAA's explanation sufficient to raise a material dispute of fact on this point.

Plaintiffs further argue that the offered criteria are suspicious given that more than a dozen state tournaments were *not* scheduled for Saturday competition. Dkt. #53 at 10. However, WIAA explains that it has only carved out an exception to its Saturday end-day policy for the state championship tournament in two sports: golf and volleyball. To the extent Plaintiffs claim that WIAA accommodates basketball, soccer and baseball teams, WIAA responds that it "does not change tournament dates but is able to adjust starting times of the games for those schools." Dkt. #57 at 6 (citing Dkt. #59 at ¶¶ 12-14). Plaintiffs also claim that dance and drill have been scheduled for non-Sabbath competition, but WIAA explains that those events are always scheduled for Friday and Saturday, with 4A teams performing on Friday in even-numbered years and other classifications performing on Saturday, with the order reversed in odd-numbered years. Dkt. #59 at ¶ 18. WIAA agrees with Plaintiffs that golf has always been scheduled for weekday

play for the past 33 years, but explains its scheduling is due to the unavailability of golf courses on weekends. *Id.* at ¶¶ 6, 18.

Consequently, volleyball is the only sport for which WIAA concedes that it has accommodated Sabbath observers by not scheduling tournaments on a Saturday. For 1B and 2B volleyball teams, WIAA accommodated religiously-affiliated schools that observed the Sabbath by moving the competition from Friday-Saturday to Thursday-Friday, with all Friday matches completed before sundown. Dkt. #59 at ¶ 15. WIAA explains that it has accommodated Sabbath-observing religious schools competing in *team* sports by rescheduling the state tournament from a Friday-Saturday schedule to a Thursday-Friday schedule, with all Friday matches for the Sabbath-observant schools completed before sundown. *Id.* WIAA distinguishes accommodation of these schools from accommodation of individual student athletes at *any* Washington school based on the fact that "[a]djusting the schedule for any single athlete create[s] a conflict for several others." *Id.* at ¶ 11. WIAA attempted to accommodate three individual athletes in track and field events in 2005. *Id.* However, due to the "cascade of issues for student/athletes, coaches and schools" created by the accommodations, WIAA decided in March 2006 that the interest in accommodating individual athletes in postseason competition was outweighed by the interests of students, coaches and schools affected by the scheduling consequences. *Id.*

The Court finds that WIAA has raised a material dispute of fact as to whether its accommodation of athletes in certain sports—but not others—subjects its scheduling policy to strict scrutiny review. A reasonable factfinder could conclude that WIAA's accommodation of schools in team sports, but not for individual tennis players, is not so comprehensive that it amounts to a "system of individualized exemptions" wherein "case-by-case inquiries are routinely

made, such that there is an 'individualized governmental assessment of the reasons for the relevant conduct' . . . ." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 651 (10th Cir. 2006) (citing *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1297 (10th Cir. 2004)). Viewing the record in the light most favorable to WIAA, the Court finds that WIAA has raised a genuine issue of material fact as to whether it maintains a discretionary system of case-by-case exemptions with respect to its tournament scheduling.

Lastly, Plaintiffs filed supplemental authority to notify the Court of the Ninth Circuit's recent decision in *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228 (9th Cir. 2020). Dkt. #78. *Calvary Chapel* applied strict scrutiny to an emergency directive issued by the Governor of Nevada in response to the COVID-19 pandemic, which imposed a 50-person limit on in-person services at houses of worship. *Calvary Chapel*, 982 F.3d at 1233. In observing that the directive allowed casinos, bowling alleys, retain businesses, restaurants, arcades and other secular entities to maintain "50% of fire-code capacity" while houses of worship were limited to fifty people "regardless of their fire-code capacities," the Ninth Circuit concluded that the directive "treat[ed] numerous secular activities and entities *significantly better* than religious worship services." *Id.* (emphasis added). Given this disparate treatment of secular entities compared to religious ones, the Ninth Circuit reasoned, strict scrutiny applied.

Plaintiffs argue that because WIAA has accommodated many secular concerns in its scheduling decisions, but not religious ones, strict scrutiny applies pursuant to *Calvary Chapel*. As an initial matter, the record reflects that WIAA *has* accommodated religious conflicts in certain team sports. Indeed, one of Plaintiffs' arguments relies on WIAA's inconsistent practice of accommodating Sabbath observers in certain sports but not in tennis. *See* Dkt. #53 at 10. More fatal to Plaintiffs' argument, however, is that the facts of *Calvary Chapel* are readily

distinguishable from this case. *Calvary Chapel* relied on the Supreme Court's decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (per curiam), which the Ninth Circuit viewed as compelling it to reverse the district court. *Calvary Chapel*, 982 F.3d at 1233. *Roman Catholic Diocese* concluded that a similar executive order issued by the New York Governor during the COVID-19 pandemic that restricted attendance at religious services in certain areas "violate[d] the minimum requirement of neutrality to religion." *Roman Catholic Diocese*, 141 S. Ct. at 65–66. "Under the [Supreme] Court's reasoning, the New York order was not neutral because it 'single[d] out houses of worship for especially harsh treatment.'" *Calvary Chapel*, 982 F.3d at 1233 (quoting *Roman Catholic Diocese*, 141 S. Ct. at 65–66). In both cases, attendance regulations imposed on houses of worship, but not secular entities, were considered disparate treatment and thus subject to strict scrutiny.

Here, in contrast, WIAA's scheduling decisions do not "single out" religious activities as did the emergency directives at issue in *Roman Catholic Diocese* and *Calvary Chapel*. While both executive orders directly regulated religious activity through attendance limits, WIAA's policy merely sets forth the dates of postseason play. For that reason, it cannot be construed as treating secular activities "significantly better" than religious ones, nor as "singl[ing] out" religious entities from secular ones. *Cf. Calvary Chapel*, 982 F.3d at 1233; *Roman Catholic Diocese*, 141 S. Ct. at 65–66. Accordingly, the Court finds this line of cases inapplicable.[3]

For these reasons, the Court cannot conclude that strict scrutiny applies as a matter of law to WIAA's scheduling decisions.

---

[3] For the same reasons, the supplemental authority Plaintiffs filed on April 13, 2021—which addresses another COVID-19 public health mandate imposing attendance limits on religious gatherings—is inapplicable to the WIAA's scheduling decision at issue here. *See* Dkt. #86 (citing the Supreme Court's recent per curiam decision in *Tandon v. Newsom*, No. 20A151, 593 U.S. ___, 2021 WL 1328507 (Apr. 9, 2021)). *Tandon* reversed the Ninth Circuit's denial of plaintiffs' motion for preliminary injunction on a California law restricting religious gatherings in homes to three households.

*ii.    WIAA's Scheduling Decision Survives Rational Basis Review*

Having determined that a material dispute of fact exists as to whether strict scrutiny applies, the Court addresses whether WIAA's scheduling decision survives rational basis review. Under rational basis review, a rule must be upheld if it is "rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015) (quoting *Gadda v. State Bar of Cal.,* 511 F.3d 933, 938 (9th Cir. 2007)). Plaintiffs "have the burden to negat[e] every conceivable basis which might support [the rules] . . . ." *Id.* (quoting *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 315 (1993)) (internal quotations omitted).

Here, WIAA has met its burden to show that its policy to schedule state championship tournaments to end on Saturday is rationally related to Washington's interests. Scheduling tournaments to end on Saturday—rather than scheduling them to end on a weekday—is rationally related to the State's interest in minimizing class time missed for students and coaches, many of whom are also teachers. With 384 students competing in postseason tournaments and one to two coaches from each of the 160 schools attending, a tournament on a weekday as opposed to a Saturday would result in missed class time for hundreds of students and coaches. Dkt. #60 at ¶ 9; Dkt. #58 at ¶ 9. While Plaintiffs insist that WIAA has failed to point to any scientific study documenting the correlation between academic performance and missed class time, Dkt. #53 at 17, a scientific study is not needed to support the conclusion that sparing hundreds of students and teachers from missing class during the weekdays supports the State's interests of education. *See* Wash. Const., Art. 9, § 1 (Education is of "paramount" importance). Plaintiffs also argue that WIAA could uphold the State's interests in minimizing out-of-school time by scheduling the tournament for Sunday-Monday rather than Friday-Saturday. Dkt. #53 at 20. However, under

rational basis review, WIAA need only demonstrate that its scheduling practice is rationally related to a legitimate government purpose. WIAA has done so here.

Accordingly, having concluded that material disputes of fact preclude application of strict scrutiny, and that WIAA's scheduling policy survives rational basis review, summary judgment is denied as to Plaintiff's First Amendment claims regarding WIAA's scheduling policy.

**D. Application of Rules 22.2.5 and 22.2.6 to Joelle Chung**

Next, the Court considers whether WIAA's application of former Rule 22.2.5 and Rule 22.2.6 to Joelle Chung violated her rights under the Free Exercise Clause. For the reasons set forth below, the Court finds that material disputes of fact preclude application of strict scrutiny. Furthermore, the Court finds that WIAA's actions survive rational basis review.

*i.    Standard of Review*

Plaintiffs argue that WIAA's application of Rules 22.2.5 and 22.2.6 to Joelle Chung was not neutral or generally applicable and therefore triggers strict scrutiny. Specifically, Plaintiffs argue that (1) former Rule 22.2.5 created categorical exemptions for individuals with secular reasons to act but not religious; (2) was enforced in a discriminatory manner; and (3) created a system of "individualized exemptions" because of its open-ended exception for "unforeseen events." Dkt. #53 at 21-25. The Court will address each argument in turn.

1.    Categorical Exemptions

First, Plaintiffs argue that former Rule 22.2.5, as applied to Joelle Chung, was not neutral or generally applicable because it included categorical exemptions for individuals with secular reasons to withdraw but not for individuals with religious reasons. Dkt. #53 at 21. A law is not generally applicable "if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect."

*Stormans, Inc.*, 794 F.3d at 1079 (citing *Lukumi*, 508 U.S. at 542–46). In other words, if a law "fails to include in its prohibitions substantial, comparable secular conduct that would similarly threaten the government's interest, then the law is not generally applicable." *Id.*

The Court finds that the categorical exemptions for withdrawal, including injury and illness, do not defeat the general applicability of Rule 22.2.5. In contrast to the categorical exemptions at issue in *Stormans*, the category for "unforeseen events" plainly encompasses both secular and religious reasons—whether that be illness or injury, as enumerated by the rule, or unexpected religious obligations. Likewise, the Rule's prohibition on expected absences does not apply strictly to religiously-motivated conduct. The distinction between approved and non-approved absences under Rule 22.2.5 does not hinge on whether the reason for absence is religiously-based, but whether the reason for the withdrawal is anticipated.[4] Accordingly, the Court finds that strict scrutiny does not apply to former Rule 22.2.5 based on its categorical exemptions.

### 2. Enforcement in Selective and Discriminatory Manner

Next, Plaintiffs contend that WIAA's application of former Rule 22.2.5 to Joelle Chung is subject to strict scrutiny because WIAA selectively enforced the Rule in a discriminatory manner. Dkt. #57 at 14-15. A rule is not generally applicable if it is enforced in a selective and discriminatory manner. *Stormans*, 794 F.3d at 1079 ("A law is not generally applicable if it, 'in

---

[4] For the same reasons discussed *supra*, § III(C)(i), Plaintiffs' supplemental authority on First Amendment rights during COVID-19 is inapplicable here. *Calvary Chapel* addressed an emergency directive issued by the Governor of Nevada in response to the COVID-19 pandemic that expressly regulated the operations of houses of worship. *Calvary Chapel*, 982 F.3d at 1233. Consequently, the Ninth Circuit concluded that the directive "treat[ed] numerous secular activities and entities *significantly better* than religious worship services" and therefore engaged in disparate treatment. *Id.* (emphasis added). Here, in contrast, the language of former Rule 22.2.5 applied to both secular and religious entities and turned on whether the withdrawal was expected—not whether the conduct was religiously-motivated.

a selective manner [,] impose[s] burdens only on conduct motivated by religious belief.'")
(quoting *Lukumi,* 508 U.S. at 543).

Here, Plaintiffs argue that WIAA prohibited Joelle from withdrawing to observe her Sabbath based on Rule 22.2.5, yet in practice permitted secular withdrawals "for any reason or no reason at all." Dkt. #77 at 10. These anticipated withdrawals for secular reasons included a trip to Alaska, a quinceañera celebration, and a manicure appointment. Dkts. #54-3 at 89-92; Dkt. #54-2 at 199; Dkt. #54-15 at 16. Other withdrawals were granted where no reason for the student's absence was provided. *See, e.g.*, Dkt. #54-30 ("She can't go"); Dkt. #54-1 at 52 (withdrawal from state "due to a conflict."); *id.* at 36 (golfer "will not be attending the state tournament"). In each of these instances, WIAA officials failed to investigate the circumstances of these withdrawals to determine if they were consistent with the Rules. *See* Dkt. #54-3 at 63-72. Plaintiffs argue that these secular exemptions, which did not comply with Rule 22.2.5, show that WIAA engaged in selective and discriminatory application of the Rules to Joelle.

WIAA responds that its failure to enforce Rules 22.2.5 and 22.2.6 against withdrawing students is not evidence of selective enforcement because it operated under a system of "passive enforcement," meaning that it relied on reports of non-compliance rather than proactive enforcement of the rules. Dkt. #57 at 21-22. In *Stormans*, the Ninth Circuit concluded that in a passive enforcement system, disproportionate complaints against a single entity were not evidence of selective enforcement given that enforcement was only triggered in response to complaints. *Stormans*, 794 F.3d at 1083–84 ("[S]elective enforcement cannot be inferred from the fact that Ralph's has been implicated in a disproportionate percentage of investigations, because the Commission responds only to the complaints that it receives.").

WIAA has raised a material dispute of fact as to whether it operated a system of passive enforcement at the time it prohibited Joelle's withdrawal under former Rule 22.2.5. Due to limited staff and resources, WIAA explains that "it does not have an investigation on arm to monitor 400 high schools, 400 middle schools and 200,000 participants in all of the sports and activities," and therefore "relies on its members to self-report violations of the rules." Dkt. #60 at ¶ 12. Likewise, where emails withdrawing a student from competition failed to give any reason, WIAA Assistant Executive Director Barnes explains that he "would not . . . assume that there was any violation of Rule 22.2.5 even if it was not specifically stated that the withdrawal was due to injury, illness or an unforeseen event." *Id.* at ¶ 13. Viewing these facts in the light most favorable to WIAA, the Court finds that a material dispute of fact exists as to whether WIAA engaged in a passive enforcement system, and thus whether its enforcement of the Rules against Joelle—but not the students traveling to Alaska, celebrating a quinceañera, or withdrawing for unstated reasons—amounts to "selective enforcement" such that strict scrutiny is triggered.

Plaintiffs contend that even if the above-listed exceptions could be construed as passive enforcement, WIAA allowed tennis players taking the international baccalaureate ("IB") exam and Sabbath-observing volleyball players in Sea-Tac League to forfeit in violation of the Rules without imposing penalties. Dkt. #77 at 11-12. Viewing the facts in the light most favorable to WIAA, the Court finds that material disputes of fact exist with respect to both exceptions. Regarding the IB exam takers, WIAA maintains that the conflict arose on "short notice" at the time the accommodation was given and was a legal withdrawal under the United States Tennis Association ("USTA") rules, which allows a player to default one match at a tournament without penalty. Dkt. #60 at ¶ 15. Given that WIAA follows USTA rules "unless the WIAA has explicitly stated otherwise," WIAA initially considered the IB exam an "unforeseen circumstance" under

Rule 22.2.5 and allowed the players to default their first-round matches. *Id.* Only after the Executive Board conferred later did it agree that the outcome was contrary to the objective of Rule 22.2.5 to limit holes in the bracket and determined that, going forward, a default for IB exams would not be permitted. *Id.* A reasonable person may conclude that the WIAA's treatment of IB exam takers, which was consistent with USTA rules but ultimately deemed a violation of Rule 22.2.5 after-the-fact, does not amount to selective enforcement. For that reason, viewing the facts in the light most favorable to WIAA, the application of former Rule 22.2.5 to IB exam takers does not trigger strict scrutiny review as a matter of law.

A reasonable person may likewise conclude that granting Sabbath-related withdrawals for volleyball teams in the Sea-Tac League, but not for individual tennis players, does not constitute selective and discriminatory enforcement against members of religious communities that observe the Sabbath. In 2014, the Sea-Tac League asked WIAA to allow three Sabbath-observing schools to play in the postseason tournament even though they would withdraw if they qualified for district. Dkt. #59 at ¶ 16. The request was presented "with the support of all of the Sea-Tac League schools" given that the league tournament "would not be much of an event" without the three Sabbath-observing schools, and "there would be no unfairness to any of the Sea-Tac league schools since they had all agreed to the proposal." *Id.* at ¶ 16. Viewed in the light most favorable to WIAA, a reasonable factfinder may conclude that WIAA's accommodation of three Sabbath-observing teams in Sea-Tac League, requested and agreed to by all teams in the league, is not evidence of selective or discriminatory enforcement against Sabbath observers.

For these reasons, the Court finds that a material dispute of fact exists as to whether WIAA engaged in selective and discriminatory enforcement against Joelle based on its application of Rules 22.2.5 and 22.2.6 to IB exam takers and the Sea-Tac League volleyball teams.

3. *Sherbert* Individualized Exemptions

Finally, Plaintiffs argue that the exception under Rule 22.2.5 for "unforeseen events" triggers strict scrutiny review as it amounts to a system of individualized exemptions. Dkt. #53 at 24-25. The "individualized exemption" exception recognized in *Sherbert* addresses "systems that are designed to make case-by-case determinations." *Axson-Flyyn*, 356 F.3d at 1298. However, the exception does not apply to rules "that, although otherwise generally applicable, contain express exceptions for objectively defined categories of persons." *Id.*; *see also Swanson,* 135 F.3d at 698, 701 (school district's policy requiring full-time attendance by all students did not "establish a system of *individualized* exceptions that give rise to the application of a subjective test" when the exceptions to the policy were confined to "strict categories of students," such as fifth-year seniors and special education students); *Hicks v. Halifax County Bd. of Educ.,* 93 F.Supp.2d 649, 657 n. 4 (E.D.N.C. 1999) (limited financial hardship exception to school's uniform policy did not "rise to the level" of system of individualized exemptions). *But see Fraternal Order of Police v. City of Newark,* 170 F.3d 359, 364–66 (3d Cir.1999) (police department regulation prohibiting beards was not generally applicable under *Smith* as it allowed medical exemptions but not religious exemptions).

Here, the category for "unforeseen events" does not create a system of individualized exemptions. Even if some degree of individualized inquiry were needed to determine whether an event is truly "unforeseen" such that it triggers the exception to Rule 22.2.5, the exception is limited to the objectively-defined category of unexpected conflicts. *See Axson-Flyyn*, 356 F.3d at 1298 ("While of course it takes some degree of individualized inquiry to determine whether a person is eligible for even a strictly defined exemption, that kind of limited yes-or-no inquiry is qualitatively different from the kind of case-by-case system envisioned by the *Smith* Court in its

discussion of *Sherbert* and related cases."). By its plain terms, the category "unforeseen events" always excludes weekly Sabbath observance. Accordingly, the category of "unforeseen events" does not trigger strict scrutiny based on the *Sherbert* "individualized exemption" exception.

     *ii.*     *WIAA's Application of Rules 22.2.5 and 22.2.6 Survives Rational Basis Review*

Having concluded that material disputes of act preclude application of strict scrutiny to Rule 22.2.5 and WIAA's application of the Rule to Joelle Chung, the Court assesses whether, as a matter of law, WIAA's actions survive rational basis review. For the reasons set forth below, the Court finds that WIAA has demonstrated a rational basis for prohibiting Joelle from competing in postseason competition due to her anticipated withdrawal if she qualified for state.

Under rational basis review, WIAA need only demonstrate that Rules 22.2.5 and 22.2.6 and their application to Joelle Chung were "rationally related to a legitimate governmental purpose." *Stormans*, 794 F.3d at 1084 (quoting *Gadda,* 511 F.3d at 938). The Court finds that WIAA has met its burden to show that former Rule 22.2.5 and Rule 22.2.6, which only allowed withdrawals for injury, illness, or other unforeseen events, were rationally related to WIAA's interest in fair competition by preventing planned withdrawals from postseason tournaments. *See* Dkt. #58 at ¶ 16. Withdrawals, which create holes in the tournament bracket, give certain players an unfair advantage since they do not risk suffering injury and are better rested to play their next match. *Id.* Furthermore, even if the hole can be filled by an alternate, anticipated withdrawals are unfair to athletes who could have participated in postseason without withdrawing but were precluded from doing so because of the withdrawing athlete. *Id.* The Court finds that these reasons support a rational basis for Rule 22.2.5 barring planned withdrawals from postseason competition. For the same reasons, the application of Rule 22.2.5 to Joelle Chung, which

prevented her from competing in postseason competition when she planned to withdraw if she advanced to state, supported the WIAA's legitimate interest in ensuring fair competition.

Plaintiffs respond that WIAA has no cognizable interest in protecting other students from planned withdrawals, given that withdrawals for the secular reasons set forth under Rule 22.2.5, including injury, illness, or another unforeseen event, have the same effect as withdrawals for Sabbath observance. The Court finds the two easily distinguishable, given that allowing anticipated withdrawals *in addition to* unforeseen withdrawal magnifies the problems created by holes in the bracket, which give certain athletes an unfair advantage over others. Furthermore, anticipated withdrawals prejudice athletes who could have competed in postseason but for the withdrawing player. Plaintiffs further argue that WIAA's purported concerns about opening up tournaments to religious withdrawals is "bizarre," given that it amended Rules 22.2.5 and 22.2.6 to permit religious withdrawals and "no dire consequences have followed." Dkt. #77 at 12. As an initial matter, WIAA's decision to change course in response to litigation does not invalidate any of its asserted interests in minimizing holes in the bracket and unfairness to other players caused by expected withdrawals. Furthermore, Plaintiffs' conclusory argument that "no dire consequences have followed" is insufficient to conclude that no interests were served by the original rules that barred anticipated withdrawals for any reason.

Accordingly, the Court finds that former Rule 22.2.5 and Rule 22.2.6, and WIAA's application of the Rules to Joelle Chung, survive rational basis review.

**E. Equal Protection Claims**

Before proceeding to Plaintiffs' state law claims, the Court will address Plaintiffs' cursory reference to their Equal Protection claims. *See* Dkt. #53 at 20, n.6. In a footnote, Plaintiffs assert that "WIAA's longstanding preference for Sunday Sabbatarians also violates Equal Protection."

*Id.* "Because this preference 'impinge[s] . . . a fundamental right,' it must be 'precisely tailored' to serve a compelling interest." *Id.* (quoting *Plyler v. Doe*, 457 U.S. 202, 216–17 (1982)).

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "This is 'essentially a direction that all persons similarly situated should be treated alike.'" *Stormans Inc. v. Selecky*, 844 F. Supp. 2d 1172, 1199–200 (W.D. Wash. 2012) (quoting *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985)). Courts apply strict scrutiny to state action that classifies by race, alienage, or national origin or impinges a fundamental right. *Id.* Here, Plaintiffs have not demonstrated as a matter of law that WIAA's actions impinge a fundamental right such that strict scrutiny applies. Nor do they argue, in the alternative, that WIAA's actions fail rational basis review. Accordingly, summary judgment on this claim is properly denied.

**F. Washington's Free Exercise Provision**

Plaintiffs also move for summary judgment on their claims under the free-exercise provision of the Washington State Constitution, art. 1 § 11. Section 11 protects "freedom of conscience in all matters of religious sentiment, belief, and worship" and guarantees that "no one shall be molested or disturbed in person or property on account of religion." Art. 1, § 11. Plaintiffs argue that, as a matter of law, WIAA violated Section 11 by (1) scheduling state championship tournaments on the Sabbath; and (2) applying former Rule 22.2.5 to bar Sabbath observers, like Joelle, from participating in any post-season play. Dkt. #53 at 28-29.

As an initial matter, parties dispute whether Section 11 affords Plaintiffs greater protection than the First Amendment's Free Exercise Clause. Under Washington law, courts apply a *Gunwall* analysis to determine when and how Washington's constitution affords different

protection of rights than the federal Constitution. *See State v. Gunwall*, 106 Wash.2d 54, 720 P.2d 808 (1986). Where courts have "already determined in a particular context the appropriate state constitutional analysis under a provision of the Washington State Constitution, it is unnecessary to provide a threshold *Gunwall* analysis." *City of Woodinville v. Northshore United Church of Christ*, 166 Wash. 2d 633, 641, 211 P.3d 406, 410 (2009)

In the context of free exercise of religion, Washington courts previously interpreted Section 11 to provide the same protection as the First Amendment's free exercise clause and therefore applied strict scrutiny to laws burdening religion. *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469, 524, 441 P.3d 1203, 1231 (2019) (collecting cases). However, in 1990, the U.S. Supreme Court adopted rational basis review for neutral, generally applicable laws that incidentally burden religion. *Id.* (citing *Smith*, 494 U.S. at 878–90). After *Smith*, the Washington Supreme Court revisited its Section 11 test in five cases—all of which were churches challenging land use regulations—and determined that strict scrutiny applied. *Id.* at 527. However, while the court noted that these five holdings were limited to land use cases, it declined to address whether strict scrutiny applies to Section 11 claims "even if the regulation indirectly burdens the exercise of religion," as is the case here. *See id.* at 528.

Parties dispute the consequence of these post-*Smith* holdings in terms of the standard applied in this case. Plaintiffs argue that strict scrutiny applies to all free exercise claims brought under Section 11. Dkt. #77 at 13. WIAA, relying on dicta from *Arlene's Flowers*, contends that the post-*Smith* holdings are limited to land use regulations. Dkt. #57 at 24. WIAA further argues that even if *Arlene's Flowers* merely casts doubt on the standard to apply, Plaintiffs at least needed to address the *Gunwall* factors to support their argument that Section 11 affords broader protections.

The Court need not resolve parties' dispute as to the standard applied under Section 11. Even under the test proposed by Plaintiffs, material disputes of fact preclude summary judgment. Under the four-pronged analysis applied before and after *Smith* to Section 11 challenges, a plaintiff must show (1) that their belief is sincere; and (2) that the government action burdens the exercise of religion. *City of Woodinville*, 166 Wash. 2d at 642, 211 P.3d 406 (citing *Open Door Baptist Church v. Clark County,* 140 Wash.2d 143, 152, 995 P.2d 33 (2000)). Assuming the higher standard of strict scrutiny applies, the government must show that it has a narrow means for achieving a compelling goal. *Id.* WIAA does not dispute that Plaintiffs' observance of the Sabbath is sincere. Accordingly, the issue presented here is whether WIAA's actions burden the exercise of Plaintiffs' religion and, if so, whether their actions fulfill a compelling goal.

Viewing the facts in the light most favorable to WIAA, a reasonable factfinder may conclude that WIAA's tournament scheduling decision did not burden Joelle's exercise of her religion to the extent that it violated her state free exercise rights under Section 11. Government burdens religious exercise "[i]f the 'coercive effect of [an] enactment' operates against a party 'in the practice of his religion . . . .'" *First Covenant Church v. City of Seattle,* 120 Wash.2d 203, 226, 840 P.2d 174 (1992) (second alteration in original) (quoting *Witters v. Comm'n for the Blind*, 112 Wn.2d 363, 371, 771 P.2d 1119 (1989)). "This does not mean any slight burden is invalid, however." *City of Woodinville*, 166 Wash. 2d at 642–43, 211 P.3d 406. Rather, "a burden can be a slight inconvenience without violating article I, section 11, but the State cannot impose *substantial burden* on the exercise of religion." *Id.* at 644, 211 P.3d 406 (emphasis added). In analyzing the coercive effect of government action, courts have distinguished cases where the action disadvantages a plaintiff, such as the denial of financial aid, from instances where "persons have been pressured by state policies to choose between benefits or rights and practicing their

religion." *Witters v. State Comm'n for the Blind*, 112 Wash. 2d 363, 371, 771 P.2d 1119, 1123 (1989).  In *Witters*, the denial of vocational aid to the plaintiff "did not compel or pressure him to violate his religious belief" given that provision of financial aid was not a benefit to which he was entitled.  *See id.* ("This case is dissimilar to those in which persons have been pressured by state policies to choose between benefits or rights and practicing their religion.").

Here, Plaintiffs have failed to demonstrate as a matter of law that WIAA's actions inflicted a "substantial burden" on Joelle such that its scheduling decision or application of former Rule 22.2.25 violated her state free exercise rights.  While Washington courts recognize participation in sports as an activity that "supplements and enriches a student's educational experience," they acknowledge "there is no fundamental right to engage in interscholastic sports." *Taylor v. Enumclaw Sch. Dist. No. 216*, 132 Wash. App. 688, 697, 133 P.3d 492, 496 (2006) ("We hold that participation in interscholastic sports is a privilege, not a protected property or liberty interest arising under Washington Law.").  Here, Plaintiffs assert an even narrower right—Joelle's entitlement to compete in postseason play, in the sport of her choice.  The Court cannot conclude, as a matter of law, that competing in tennis postseason competition was a right or benefit to which she was entitled.

The cases Plaintiffs rely upon are inapposite.  Plaintiffs cite several cases brought by students against school districts under the Religious Freedom Restoration Act ("RFRA").  As an initial matter, Plaintiffs have provided no support for their proposition that the construction of "substantial burden" under RFRA extends to the context of Section 11.  Indeed, in other contexts, courts have refrained from exporting the definition of "substantial burden" from RFRA to other statutes.  *See, e.g., C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (Finding that definition of "substantial burden" under RFRA "cannot be the correct construction

of 'substantial burden on religious exercise' under [the Religious Land Use and Institutionalized Persons Act]."). The Court cannot conclude, absent further support, that the meaning of "substantial burden" under RFRA automatically extends to Section 11.

Moreover, even if the meaning of "substantial burden" under RFRA applies to Section 11 claims, the cited cases are distinguishable from the facts at issue here. In *Cheema v. Thompson*, the Ninth Circuit found that the school district placed a substantial burden on students' exercise of religion by enforcing its weapons ban against students whose religious beliefs required them to always carry ceremonial knives. *See* F.3d 883, 884–85 (9th Cir. 1995). Accordingly, plaintiffs were faced with the dilemma of either leaving their ceremonial knives at home, thus violating a fundamental tenet of their religion, or not attending school. Similarly, in *Gonzales v. Mathis Indep. Sch. Dist.*, students were banned from participating "in *any* extra-curricular or [University Interscholastic League] activities" unless they complied with the school district's hair grooming policy. No. 18-cv-43, 2018 WL 6804595, at *1, 5 (S.D. Tex. Dec. 27, 2018) (emphasis added). In both instances, the government's actions forced students to choose between complete exclusion from school or extracurricular activities and abandoning a central tenet of their religion. Here, in contrast, Joelle was not faced with such a dilemma. Rather, she was forced to choose between her religion and competing in postseason tournaments in the sport of her choice. Viewing these facts in the light most favorable to WIAA, a reasonable person may conclude that WIAA's scheduling policy or application of Rule 22.2.5 did not impose a burden on Joelle so substantial that it violated Section 11.

## G. RCW 28A.600.200

Finally, Plaintiffs move for summary judgment on their claims under RCW § 28A.600.200. RCW § 28A.600.200 prohibits state entities, including WIAA, from

discriminating on creed in "any function it performs." RCW § 28A.600.200. Plaintiffs concede that Washington courts "haven't yet had occasion to construe 'creed' discrimination" but indicate that two other state statutes—the Washington Law Against Discrimination ("WLAD"), RCW § 49.60.180(3), and RCW § 28A.642.010—require reasonable accommodation of religious practices absent undue hardship. Dkt. #53 at 29-30. Plaintiffs argue that because Washington law requires statutes relating to the same subject matter to be read *in pari materia*, the state supreme court "would likely interpret § 28A.600.200 to contain the same requirement." *Id.* at 30. The Washington doctrine of *in pari materia* means "each provision of a statute should be read together with other provisions in order to determine legislative intent." *In re Estate of Kerr*, 134 Wash.2d 328, 336, 949 P.2d 810 (1998). Courts read related provisions *in pari materia* "to determine the legislative intent underlying the entire statutory scheme and read the provisions 'as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes.'" *State v. Williams,* 94 Wash.2d 531, 547, 617 P.2d 1012 (1980) (quoting *State v. Wright,* 84 Wash.2d 645, 650, 529 P.2d 453 (1974)).

The Court is not persuaded that RCW § 28A.600.200 must be construed *in pari materia* with WLAD and RCW § 28A.642.010, or that the invoked rule of statutory construction supports the interpretation proposed by Plaintiffs. Statutory provisions stand *in pari materia* if they "relate to the same person or thing, or the same class of persons or things." *State v. Houck,* 32 Wash.2d 681, 684, 203 P.2d 693 (1949). Here, RCW § 28A.600.200 governs the administration of interscholastic sports and activities for students. The WLAD, in contrast, is an employment statute that creates a private cause of action against an employer engaging in an "unfair practice." RCW § 49.60.180; *see also Kumar v. Gate Gourmet, Inc.*, 180 Wash.2d 481, 489, 325 P.3d 193 (2014). In determining the scope of the WLAD, Washington courts look to federal law. *Id.* at

491 ("[E]ven though almost all of the WLAD's prohibitions predate Title VII's, the ADA's, and the ADEA's, Washington courts still look to federal case law interpreting those statutes to guide our interpretation of the WLAD."). Consequently, although the WLAD lacks an express requirement for employers to make "reasonable accommodations" for employees' religious practices, courts have read an implied requirement into it so that the WLAD affords employees the same protections against religious discrimination that Title VII provides. *Id.* at 492. While Plaintiffs urge the Court to read the same implied requirement into RCW § 28A.600.200, they have offered no coherent basis for reading the statutes together, or for exporting a "reasonable accommodation" requirement from federal employment law into a state statute governing administration of interscholastic activities.

Plaintiffs' arguments as to RCW § 28A.642.010 are likewise unavailing. While RCW § 28A.642.010 prohibits discrimination in Washington public schools, RCW § 28A.600.200 governs the operations of voluntary nonprofit entities such as the WIAA that organize extracurricular sports and activities. To the extent that both statutes address the general category student affairs, Washington courts have distinguished between the realm of education and that of interscholastic sports. *See Taylor*, 132 Wash. App. at 697, 133 P.3d 492 ("[A]lthough participation in extracurricular activities, including sports, clearly supplements and enriches a student's educational experience, neither sports nor any other extracurricular activity is required for graduation or mandated by state law."). For these reasons, the Court is not persuaded that the statutes address sufficiently related subject matter such that they must be read *in pari materia*.

Moreover, even if the statutes addressed sufficiently related subject matter, Plaintiffs provide scant support for their proposition that RCW 28A.642.010 contains an implied "reasonable accommodation" requirement for religious practices. *See* Dkt. #53 at 29-30 (citing

*Kumar*, 325 P.3d 193, 203–04).  Plaintiffs' reliance on *Kumar* is misplaced, given that the case only addresses the WLAD without any reference to RCW § 28A.642.010.  *See generally Kumar*, 180 Wash. 2d 481, 325 P.3d 193.  Plaintiffs also rely on a Washington Public Schools guidance document, *Prohibiting Discrimination in Washington Public Schools: Guidelines for School Districts*, Office of Superintendent (2012), https://perma.cc/JT7R-HCMH.  While this document references reasonable accommodations for individuals with disability and transgender and gender nonconforming students, it only references reasonable accommodation of religion in the context of employer-employee relations.  *See id.* at 55 ("Employers may be required . . . to provide reasonable accommodations to enable an employee to do his or her job.").  Accordingly, the Court finds insufficient basis to construe Section 28A.642.010 as containing an implied requirement for reasonable accommodation of religion.

For these reasons, the Court DENIES Plaintiffs' motion for summary judgment on their claims under RCW § 28A.600.200.

## IV.    CONCLUSION

Having reviewed Plaintiffs' Motion, Defendant's Response, Plaintiffs' Reply, the exhibits and declarations attached thereto, and the remainder of the record, it is ORDERED that Plaintiffs' Motion for Summary Judgment, Dkt. #53, is DENIED.

Dated this 10th day of May, 2021.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE