UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHUNG, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON INTERSCHOLASTIC ACTIVITIES ASSOCIATION, <br><br> Defendant. | Case No. C19-5730-RSM <br><br> ORDER GRANTING PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF EXPERT WITNESS WILLIAM E. PARTIN |

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion to Exclude Testimony of Washington Interscholastic Activities Association ("WIAA")'s expert witness, William E. Partin. Dkt. #45. WIAA opposes Plaintiffs' motion. Dkt. #49. Having reviewed the parties' filings, exhibits filed in support thereof and the remainder of the record, the Court GRANTS Plaintiffs' Motion to Exclude.

//

//

## II. BACKGROUND

Plaintiffs, former and current high school tennis players who observe the Sabbath, bring this action against the WIAA alleging violations of their rights to free exercise of religion and equal protection under the U.S. Constitution and Washington state law. Dkt. #34. WIAA proffers expert testimony of William E. Partin, a licensed CPA with certifications in business valuation and fraud examination and experience in financial forensics, with 45 years of experience as an economist. Dkt. #45-2 at 8-9. Mr. Partin would testify on the economic effects of scheduling WIAA's state championship tournaments so that they do not conclude on a Saturday. Dkt. #45-1 at 2. At issue in this motion is a report drafted by Mr. Partin that calculates the financial costs of shifting all state championship tournaments from Saturdays to Monday through Thursdays. *See* Dkt. #45-1 at 7-18 ("the Report").

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, the trial court acts as a gatekeeper and ensures that the proffered scientific testimony meets certain standards of both relevance and reliability before it is

admitted. *Daubert v. Merrell Dow Pharm., Inc. ("Daubert I")*, 509 U.S. 579, 590 (1993). The party proffering expert testimony has the burden of showing the admissibility of the testimony by a preponderance of the evidence. *Daubert I*, 509 U.S. at 592 n.10. "[J]udges are entitled to broad discretion when discharging their gatekeeping function" related to the admission of expert testimony. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–53 (1999)).

Expert testimony is relevant if it assists the trier of fact in understanding evidence or in determining a fact in issue. *Daubert I*, 509 U.S. at 591. Thus, the party proffering such evidence must demonstrate a valid scientific connection, or "fit," between the evidence and an issue in the case. *Id.* Expert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people because it would not assist the trier of fact in analyzing the evidence. In the Ninth Circuit, "[t]he general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony." *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986). Because unreliable and unfairly prejudicial expert witness testimony is not helpful to the trier of fact, the trial court should exclude such evidence. *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001). Likewise, expert testimony that merely tells the jury what result to reach is inadmissible. Fed. R. Evid. 704, Advisory Committee Note (1972); *see, e.g.*, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

The trial court must also ensure that the proffered expert testimony is reliable. Generally, to satisfy Rule 702's reliability requirement, "the party presenting the expert must show that the

expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316. Toward this end, the Supreme Court in *Daubert I* set forth the following factors for the trial court to consider when assessing the reliability of proffered expert testimony: (1) whether the expert's method, theory, or technique is generally accepted within the relevant scientific community; (2) whether the method, theory, or technique can be (and has been) tested; (3) whether the method, theory, or technique has been subjected to peer review and publication; and (4) the known or potential rate of error of the method, theory, or technique. *Daubert I,* 509 U.S. at 593–94. An expert opinion is reliable if it is based on proper methods and procedures rather than "subjective belief or unsupported speculation." *Id.* at 590. The test for reliability "'is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *Daubert II*, 43 F.3d at 1318).

Alternative or opposing opinions or tests do not "preclude the admission of the expert's testimony—they go to the *weight*, not the admissibility." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (emphasis in original). Furthermore, "'[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" *Id.* (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).

//

//

**B. Plaintiffs' Motion to Exclude the Testimony of William Partin**

ORDER GRANTING PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF EXPERT WITNESS
WILLIAM E. PARTIN
PAGE - 4

Plaintiffs seek to exclude Mr. Partin's testimony under Fed. R. Evid. 702 on two bases: (i) the testimony is not sufficiently tied to the facts of the case; and (ii) the testimony is based on unreliable methodology. Alternatively, Plaintiffs argue that even if the evidence is admissible under Fed. R. Evid. 702, it should be excluded under Fed. R. Evid. 403 as unfairly prejudicial.

      *i.*      *Relevance of Mr. Partin's Testimony*

Plaintiffs argue that Mr. Partin's testimony is not sufficiently relevant to the facts of the case given that (1) the Report considers the financial impact of rescheduling *all* state championship tournaments; and (2) it limits its analysis to tournaments starting Monday through Thursday while disregarding the possibility of scheduling tournaments on Friday before sundown. Dkt. #45 at 6-10. For the reasons set forth below, the Court agrees that the testimony is not sufficiently tied to the facts of the case.

As an initial matter, the Report purports to estimate costs of rescheduling the 2A tennis state tournament by calculating the costs of moving *all* sports off Saturday play. *See* Dkt. #45-1. This is based on WIAA's logic that "[t]he result, if plaintiffs' claims are meritorious, would mean *no state tournaments* could be scheduled on Saturdays, or Fridays." Dkt. #49 at 7 (emphasis added). WIAA provides evidence that Sabbath-observing individuals participate in sports besides 2A tennis, including track and field, soccer, basketball and football. Dkt. #52 at ¶ 6. WIAA also provides evidence that should Plaintiffs prevail here, students would expect accommodations for those sports as well. *See also* Dkt. #50 at 23 (Email from parent of two Sabbath-observing students to Paul Chung, stating "I'd like to share [press story] with Sabbath observing groups, to try to heighten awareness and help people to realize they aren't alone in dealing with this etc. Maybe the WIAA would wake up if their phone and email start getting clogged."). However,

without any indication that Sabbath observers compete in every division of every sport, this evidence only tenuously supports WIAA's logical leap that moving the 2A tournament would require rescheduling the championship events for *all* sports to accommodate Sabbath-observing athletes. Instead, it supports the more modest proposition that moving the 2A tournament would reasonably lead to accommodations for Sabbath observers in other divisions and sports in which Sabbath-observing students compete.

In addition to its questionable assumption that all championship events would need to be rescheduled to accommodate Sabbath observers, the Report also estimates the costs of moving the schedule for all sports by two days—regardless of whether they may accommodate Sabbath observers by simply adjusting the start time. *See* Dkt. #45-1 at 26 ("Our analysis assumes *all new game days will occur two days prior* to the current game day (a game currently held on Saturday would now be held on Thursday).") (emphasis added). Yet WIAA has established that it may accommodate Sabbath-observing teams in certain team sports, such as basketball, by maintaining its Friday-Saturday schedule but adjusting the start times of the games. *See* Dkt. #45-5 at 63:6-64:23 (We have accommodated [Sabbath-observing] teams at state basketball because it's reasonable there where the teams play one game a day and we have two courts going at the same time."). Nevertheless, the Report ignores that certain sports would not necessarily require changes to the day of play to accommodate Sabbath observers, instead calculating the cost of shifting the start-date of *all* sports by two days. *See* Dkt. #45-1 at 27 (Adjusting all sports to Monday through Thursday schedule to eliminate Friday/Saturday play).

Because the Report's underlying assumptions lack a factual basis in the record, the Court finds that its cost estimation would not assist the trier of fact in understanding the costs associated

ORDER GRANTING PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF EXPERT WITNESS
WILLIAM E. PARTIN
PAGE - 6

with accommodating Plaintiffs in the 2A state championship tournament. *Daubert I*, 509 U.S. at 591. On this basis alone, WIAA has failed to meet its burden to demonstrate the relevance of the Report.

        *ii.*     *Reliability*

Even if the Court found Mr. Partin's testimony relevant, WIAA has also failed to sufficiently demonstrate reliability of the Report. Plaintiffs contend that Mr. Partin's analysis improperly assumes (1) that weekday-versus-weekend basketball attendance statistics are a reliable indicator for consumer-attendance behavior in all other WIAA sports; and (2) that the day of the week is the only contributing factor as to whether an individual will attend a state championship event. Dkt. #45 at 11. As stated previously, to satisfy Rule 702's reliability requirement, "the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316. An expert opinion is reliable if it is based on proper methods and procedures rather than "subjective belief or unsupported speculation." *Daubert I*, 509 U.S. at 590. For the reasons set forth below, the Court finds that WIAA has failed to demonstrate reliability under Fed. R. Evid. 702.

First, Plaintiffs challenge Partin's methodology on the basis that basketball tournaments have "unique characteristics" that set them apart from other sports. Dkt. #45 at 11-12 (citing Beth A. Cianfrone et al., *Identifying Key Market Demand Factors Associated with High School Basketball Tournaments*, 24 Sport Marketing Q. 91, 93, 100 (2015). Plaintiffs also cite to Mr. Partin's deposition, where he acknowledges that high school tennis attracts a "different type of consumer" compared to more mainstream sports. *Id.* at 12. The Report explains that it chose

ORDER GRANTING PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF EXPERT WITNESS
WILLIAM E. PARTIN
PAGE - 7

basketball ticket sales as a benchmark for measuring consumer preference based on the fact that (1) basketball is the highest revenue-grossing sport; (2) it has the largest number of ticket sales and thus the largest data set for statistical analysis; and (3) it is the only sport with a four-day championship tournament, allowing for the best statistical set for analyzing consumer preference based on day of the week. Dkt. #45-1 at 12. The Court finds that Plaintiffs' argument is not a basis for exclusion. Mere observations that basketball has unique characteristics and attracts a different audience than high school tennis goes to the weight jurors may give the Report, not its admissibility. *See Kennedy*, 161 F.3d at 1231 (Faults in expert's use of methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of testimony).

Plaintiffs also challenge Mr. Partin's methodology on the basis that it fails to consider other factors besides day of the week that may play a role in whether consumers decide to attend a state championship. Dkt. #45 at 12-13. While failure to address alternative theories is not necessarily a basis for exclusion under Fed. R. Civ. P. 702, courts have found testimony unreliable where it wholly disregards other studies or data that undermine the expert's position. *See Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc*, 55 F. Supp. 2d 1024, 1036 (N.D. Cal. 1999) (excluded report in patent infringement case "failed to exclude alternative explanations and also failed to consider published data that renders his conclusion untenable.") (internal quotations omitted); *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985–86 (9th Cir. 2020) (expert in product liability case "entirely failed to cite industry standards, peer-reviewed literature, or even test a statistically significant number of regulators to opine on the probabilities that any given Honda Pilot regulator failed because of the alleged defect.") (internal quotations omitted).

ORDER GRANTING PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF EXPERT WITNESS
WILLIAM E. PARTIN
PAGE - 8

WIAA argues that *Carnegie Mellon* and *Grodzitsky* are inapplicable here and directs the Court to *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2017 WL 11247885 (C.D. Cal. Sept. 29, 2017), and *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917 (C.D. Cal. 2016), *aff'd*, 742 F. App'x 282 (9th Cir. 2018). However, *Salas* did not address an expert's failure to acknowledge other studies or data undermining the expert's opinion. Instead, it considered arguments that the expert should have performed additional testing or was required "to rule out other causes" of the problem, and found that such arguments went to the weight, not admissibility, of the evidence. *Salas*, 2017 WL 11247885, at *5. In *Lewert*, the court declined to exclude expert testimony where there were no "obvious alternative explanations" that the expert failed to consider. *See Lewert*, 212 F. Supp. 3d at 929 ("Defendants' critique would apply only if there were obvious alternative explanations for the dilution data that Dr. Kurdistani considered or if there were obvious alternative explanations for why the four clinical trials that he reviewed were sound. Defendants have not made either showing, however, and their first reliability argument thus fails.").

Here, as in *Carnegie Mellon* and *Grodzitsky*, Partin's testimony ignores a body of academic literature undermining his position that different attendance rates at athletic games are driven primarily by the day the competition is scheduled. *See* Dkt. #45-7 at 2-14 (West Virginia University article examining market demand factors that influence attendance for high school basketball tournaments). The article, which conducts a literature review of sports marketing research on "pull factors" for high school sports tournaments, identifies several factors besides day of the week that affect attendance rates: event attractiveness, venue accessibility, economic consideration, and local attraction. *Id.* at 5-7. The Report, in contrast, assumes that any difference

ORDER GRANTING PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF EXPERT WITNESS
WILLIAM E. PARTIN
PAGE - 9

between ticket sales among days of the week "primarily reflects consumer preferences for specific days of the week." Dkt. #45-1 at 13. While it notes the possibility that the stage of playoffs may affect consumer preference, it "assume[s] consumers . . . are equally likely to purchase tickets for an event regardless of whether their team of interest is in the first day of playoff competition or the final day" for purposes of the analysis. *Id.* By not engaging with any of the academic literature on factors that affect attendance at high school sports competitions, the Report fails to address "obvious alternative explanations" for the data results on which Mr. Partin bases his findings. *Cf. Lewert*, 212 F. Supp. 3d at 929. For these reasons, WIAA has not met its burden to demonstrate the reliability of the Report.

Because WIAA has failed to meet its burden to demonstrate relevance and reliability of the Report under Fed. R. Evid. 702, the Court need not consider Plaintiffs' arguments for exclusion under Fed. R. Evid. 403.

### IV. CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiffs' Motion to Exclude Expert Testimony of William E. Partin, Dkt. #45, is GRANTED.

DATED this 18th day of May, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE