UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOELLE CHUNG, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>WASHINGTON INTERSCHOLASTIC<br>ACTIVITIES ASSOCIATION,<br><br>                    Defendant. | CASE NO. C19-5730-RSM<br><br>ORDER DENYING PLAINTIFFS'<br>MOTION FOR<br>RECONSIDERATION |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Reconsideration.  Dkt. #89. On May 10, 2021, this Court denied Plaintiffs' Motion for Summary Judgment.  Dkt. #87. Plaintiffs now move the Court to reconsider its order.  The Court has determined that response briefing from Defendant is unnecessary.  *See* Local Rules W.D. Wash. LCR 7(h)(3).

## II.   BACKGROUND

A full background of this case is not necessary given the Court's previous orders in this matter.  *See* Dkt. #87.  Plaintiffs Joelle Chung and her brothers J.N.C. and J.D.C., and their teammates A.H.B. and A.A.B., bring this action against Defendant Washington Interscholastic Activities Association ("WIAA") under the Free Exercise Clause and Equal Protection Clause of

the U.S. Constitution, the Washington State Constitution, and RCW § 28A.600.200 for failure to accommodate Sabbath observers in its scheduling and administration of high school tennis state championship tournaments. Dkt. #34. Plaintiffs are current and former students at William F. West High School ("W.F. West") and Seventh-day Adventists who observe the Sabbath each week. *Id.* at ¶¶ 1-11.

In denying summary judgment, the Court found that material disputes of fact precluded judgment as a matter of law on Plaintiffs' claims. The Court also considered a threshold standing issue, wherein WIAA argued that the minor Plaintiffs lacked standing to challenge WIAA's future scheduling of Saturday tournaments. The Court agreed. Dkt. #87 at 6-10. On May 24, 2021, Plaintiffs moved for reconsideration. Dkt. #89.

### III.      DISCUSSION

**A. Legal Standard**

"Motions for reconsideration are disfavored." Local Rules W.D. Wash. LCR 7(h)(1). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id.* Plaintiffs move for reconsideration based on (1) new evidence demonstrating that minor Plaintiffs have standing; (2) manifest error in the Court's legal analysis of *Tandon v. Newsom*, 141 S. Ct. 1294 (2021); and (3) new legal authority based on the U.S. Supreme Court's recent decision in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). The Court will address each argument in turn.

**B. Standing for Minor Plaintiffs**

Under Article III of the U.S. Constitution, federal courts are courts of limited jurisdiction, hearing only live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2. To satisfy the case-or-controversy requirement, the plaintiff must

establish "(1) [A]n 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision*." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  Here, minor Plaintiffs seek prospective relief in the form of rescheduling future state tournaments so that no play takes place between Friday sundown and Saturday sundown, as well as an injunction against WIAA to ensure it does not prohibit Plaintiffs from withdrawing from postseason competition due to religious observance.

In denying standing for minor Plaintiffs, none of whom had previously qualified for state, the Court concluded that their injury was merely speculative as opposed to actual or imminent. Dkt. #87 at 9-10.  Specifically, the Court found that statements from the minor Plaintiffs' tennis coach were insufficient, on their own, to demonstrate that minor Plaintiffs would likely qualify for state such that they would face actual or imminent injury from WIAA's scheduling decisions. *Id.*  The Court likewise observed that WIAA rescheduled the 2021 state tournament in light of the COVID-19 pandemic, injecting additional uncertainty into whether the state tournament would be held in the same format in future seasons due to the ongoing public health crisis.  *Id.* at 10.

Plaintiffs introduce evidence not available before briefing on summary judgment closed showing that two of the minor Plaintiffs did, in fact, qualify for state but were unable to compete due to WIAA cancelling the state tournament because of the pandemic.  On March 19, 2021, Plaintiffs J.N.C. and J.D.C. finished second and third, respectively, in singles competition at the district stage and therefore would have qualified for the 2A state tournament.  *See* Dkt. #89-1 at ¶¶ 2-6.

On motions for reconsideration, this district's local rules define "new facts" as those "which could not have been brought to [the court's] attention earlier with reasonable diligence."

ORDER DENYING PLAINTIFFS' MOTION FOR
RECONSIDERATION - 3

W.D. Wash. LCR 7(h).  "For purposes of a motion for reconsideration, evidence is not 'new' if it was in the moving party's possession or could have been discovered prior to the court's ruling." *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1070 (E.D. Cal. 2009) (citing *Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 212 (9th Cir. 1987)); *see also Roness v. T-Mobile USA, Inc.*, No. C18-1030-RSM, 2019 WL 4014314, at *1 (W.D. Wash. Aug. 26, 2019) (For reconsideration of a summary judgment motion, evidence is not "newly discovered" if it could have been discovered with reasonable diligence at the time of summary judgment).

Here, Plaintiffs are not entitled to reconsideration of the Court's summary judgment order based on information they had in their possession well before the Court's ruling.  Although Plaintiffs had ample opportunity to supplement the record between March 19 and May 10, as they did with notices of recent legal decisions, *see* Dkt. #86, they failed to do so with respect to this factual development.  Plaintiffs explain that based on Supreme Court precedent, they "reasonably believed they were not required to prove that the minor Plaintiffs would *in fact* qualify for the state championship tournament to have standing."  Dkt. #89 at 3 (emphasis in original).  Relying on *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, they argue that because the WIAA erected a barrier that made it "more difficult for members of one group to obtain a benefit than it is for members of another group," Plaintiffs here "need not allege that [they] would have obtained the benefit but for the barrier in order to establish standing."  *Id.* (quoting 508 U.S. 656, 666 (1993)).  In effect, Plaintiffs move for reconsideration based on evidence they had in their possession but believed was not necessary to demonstrating standing for minor Plaintiffs.  This is not a proper basis for reconsideration.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 880–81 (9th Cir. 2009) (Holding that

ORDER DENYING PLAINTIFFS' MOTION FOR
RECONSIDERATION - 4

a motion for reconsideration should not be used to present evidence that should have been presented previously).

Furthermore, to the extent Plaintiffs argue that the Court erred in its analysis of *Ne. Fla. Chapter*, 508 U.S. 656, the Court finds no manifest error of law warranting reconsideration of its standing analysis. The Court's holding did not require that minor Plaintiffs show they would "in fact qualify" for state, but it determined that that the statements Plaintiffs relied on from their coach failed to demonstrate a "likelihood of qualifying for state such that they [would] face actual or imminent injury" from WIAA's scheduling decisions. Dkt. #87 at 9. The Court found that *Ne. Fla. Chapter* and related case *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017), were inapplicable here. Both cases addressed barriers erected by the government that prevented groups from competing on equal footing in a bidding process, such that the "injury in fact" was the ability to compete on equal footing—not the loss of a contract or denial of a grant. Here, in contrast, WIAA's Rules 22.2.5 and 22.2.6 allow minor Plaintiffs to compete until a scheduled tournament conflicts with their Sabbath observance. For that reason, minor Plaintiffs compete on equal footing with non-Sabbath observers until that conflict occurs. For the 2021-22 postseason schedule, this conflict would only occur if Plaintiffs were to compete in the state championship tournament, making Plaintiffs' likelihood of competing at state essential to the standing inquiry. Considering these factual distinctions between the instant case and *Ne. Fla. Chapter* and *Trinity Lutheran*, the Court finds no manifest error in its previous conclusion that WIAA's scheduling decision, on its own, is not a "barrier" to competing on equal footing that automatically confers standing for minor Plaintiffs.

**C. Recent Supreme Court Decisions on General Applicability**

After briefing on Plaintiffs' summary judgment motion closed, Plaintiffs filed notices of supplemental authority of recent Ninth Circuit and U.S. Supreme Court decisions related to

emergency directives issued during the COVID-19 pandemic.  One of these cases, *Tandon v. Newsom*, found that strict scrutiny applied to a California mandate that restricted gatherings in homes to three households.  141 S. Ct. 1294.  The Court determined that *Tandon*, like the other decisions addressing COVID-19 public health mandates, was inapplicable to the context of WIAA's scheduling decision.  Dkt. #87 at 17, n.3.

Plaintiffs argue that the Court erred in not applying strict scrutiny under *Tandon* on the basis that *Tandon* "did not apply only to religious gatherings" and instead capped all indoor gatherings regardless of the purpose of the gathering.  Dkt. #89 at 6.  Alternatively, Plaintiffs argue, the Court should hold this motion pending resolution of the U.S. Supreme Court's ruling in *Fulton*, which was decided on June 17, 2021.  *See* Dkt. #91 at 1 (citing *Fulton*, 141 S. Ct. 1868).  Given that *Fulton* was decided on June 17, 2021, the Court will address both cases herein.

    i.    *Tandon v. Newsom*

Plaintiffs move for reconsideration on the basis that the Supreme Court's recent decision in *Tandon* requires application of strict scrutiny where government action treats "*any* comparable secular activity more favorable than religious exercise." *Tandon*, 141 S. Ct. at 1296 (emphasis in original).  This Court found *Tandon* inapplicable to the WIAA's scheduling decision here, given that it examined a public health mandate that imposed attendance limits on at-home religious gatherings.  *See* Dkt. #87 at 17, n.3.  Plaintiffs argue that the Court's previous holding disregarded the full context of the mandate at issue in *Tandon*, which addressed a blanket restriction on *any* at-home gathering—whether it be religious or secular.  Dkt. #89 at 3-7.

The Court finds no error in its previous decision.  Although the restriction on at-home gatherings applied to both religious and secular gatherings, the Supreme Court concluded that the public health mandate was not neutral or generally applicable because it treated comparable secular activities more favorably than at-home religious exercise.  Specifically, hair salons, retail

stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants were all permitted to bring together more than three households at a time. *Tandon*, 141 S. Ct. at 1297. The Supreme Court explained that "[i]t is unsurprising that such litigants are entitled to relief" where the challenged regulation "contains *myriad exceptions and accommodations for comparable activities*, thus requiring the application of strict scrutiny." *Id* at 1298 (emphasis added). This Court does not find that "myriad exceptions" for comparable secular activities are present in WIAA's tournament scheduling and in Rules 22.2.5 and 22.2.6 such that strict scrutiny must apply.

        1.     Tournament Scheduling

Plaintiffs argue that the exceptions to the Saturday scheduling rule that WIAA carved out for golf and volleyball trigger strict scrutiny as a matter of law under *Tandon*. However, the exception for volleyball was made for *religious*, not secular reasons—WIAA was able to accommodate religiously-affiliated schools for the 1B and 2B teams. This leaves golf as the lone secular-based exception to the Saturday scheduling rule due to the unavailability of golf courses on weekends. As an initial matter, this one exception to the Saturday scheduling rule for a comparable secular activity is distinguishable from the "myriad" of secular exceptions at issue in *Tandon* that required application of strict scrutiny. Moreover, the Court is not persuaded that WIAA's accommodation for golf is comparable to the accommodation denied to Plaintiffs for tennis. "Whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 141 S. Ct. at 1296. WIAA's scheduling interests are unique for golf, given that golf courses are unavailable on weekends. If WIAA refused to schedule golf on a day besides Saturday or Sunday, there would be no scheduled tournaments due to lack of available venues. WIAA's scheduling interests for golf are therefore not comparable to those for sports with available weekend venues,

for which WIAA may schedule competition based on its interests in minimizing out-of-school time for students and coaches and reserving Sunday as a travel-back day. For these reasons, *Tandon* is inapplicable here.

2.      Rules 22.2.5 and 22.2.6

Plaintiffs also argue that the exceptions in former Rules 22.2.5 and 22.2.6 that allowed withdrawal for injury, illness or unforeseen events require application of strict scrutiny under *Tandon*. Again, however, these exceptions do not amount to "myriad exceptions and accommodations" for comparable secular activities. As the Court observed in its previous order, "[t]he distinction between approved and non-approved absences under Rule 22.2.5 does not hinge on whether the reason for absence is religiously-based, *but whether the reason for the withdrawal is anticipated*." Dkt. #87 at 20 (emphasis added). Withdrawals due to unforeseen conflicts do not undermine fair competition to the same extent as expected withdrawals, the latter of which are more unfair to athletes who could have participated in postseason but for the withdrawing athlete. *See* Dkt. #58 at ¶ 16. Accordingly, the Court declines to find that withdrawal for unexpected reasons is "comparable" to withdrawals for expected reasons—whether secular or religious—such that *Tandon* would apply.

ii.      *Fulton v. City of Philadelphia*

Finally, Plaintiffs argue that the Supreme Court's recent decision in *Fulton*, 141 S. Ct. 1868, may expound on *Tandon*'s reasoning and will consider whether *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990) should be overruled. Because the Supreme Court has since issued its decision in *Fulton*, the Court will consider it herein.

*Fulton* addressed whether the city of Philadelphia's refusal to contract with a state-licensed Catholic-affiliated foster care agency unless it agreed to certify same-sex couples as foster parents violated the Free Exercise and Free Speech Clauses of the First Amendment.

The majority found that the city's non-discrimination provision was not generally applicable, and thus subject to strict scrutiny, because it incorporated a system of individual exemptions made available at the sole discretion of the City.  Indeed, the language of the anti-discrimination provision expressly barred providers from rejecting prospective foster or adoptive parents "for Services based upon . . . their sexual orientation . . . *unless an exception is granted by the Commissioner or the Commissioner's designee, in his sole discretion*."  *Id.* at 1878 (emphasis added).   For the reasons set forth below, the Court finds that *Fulton* does not warrant reconsideration in the instant case.

As an initial matter, the majority in *Fulton* declined to revisit *Smith* and concluded that the city burdened the foster care agency's religious exercise "through policies that do not meet the requirement of being neutral and generally applicable" under *Smith*.  *Fulton*, 141 S. Ct. at 1877.  Furthermore, to the extent Plaintiffs anticipated that the Supreme Court would elaborate on *Tandon*, that case was only cited in one concurrence that disagreed with the majority's decision to avoid addressing *Smith*.  *See id.* at 1926–31.  Accordingly, *Fulton* does not alter this Court's analysis under *Smith* or *Tandon*.

Turning to whether *Fulton* alters this Court's analysis of general applicability with respect to the WIAA's tournament scheduling and withdrawal rules, the Court finds no manifest error in its previous decision in light of new legal authority. The challenged provision in *Fulton* is readily distinguishable from the rules at issue here.  Regarding WIAA's tournament scheduling, Plaintiffs argued at summary judgment that WIAA's handbook, which contained no "particularized or objective criteria" for scheduling postseason competition, evinced WIAA's unfettered and purely discretionary authority in its tournament scheduling decisions.  *See* Dkt. #53 at 16.  In contrast to the provision at issue in *Fulton*, which expressly provides for exceptions made at the "sole discretion" of the Commissioner, WIAA's handbook merely affirms WIAA's authority to

determine the sites, dates, and formats of postseason tournaments. This Court rejected Plaintiffs' contention that the handbook evinced a system of individualized exemptions simply because it failed to enumerate the specific criteria guiding WIAA's scheduling decisions. *See* Dkt. #87 at 13. Noting that WIAA asserted several "particularized, objective criteria" that governed its scheduling decisions, the Court declined to conclude as a matter of law that WIAA's Saturday scheduling policy was open-ended and discretionary such that strict scrutiny applied. *Id.* at 13-14. *Fulton* does not change this analysis.

Turning to WIAA's former Rule 22.2.5 and 22.2.6, Plaintiffs argued at summary judgment that the exception to its prohibition on withdrawals for "unforeseen events" amounted to a system of individualized exemptions. Dkt. #53 at 24-25. In rejecting Plaintiffs' argument, this Court noted that the exception does not apply to "exceptions for objectively defined categories of persons." Dkt. #87 at 24 (citing *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1298 (10th Cir. 2004)). Because the category "unforeseen events" limits the exception to the objectively-defined category of unexpected conflicts, the Court reasoned, that category did not trigger strict scrutiny based on the *Sherbert* "individualized exemption" exception. Nothing in *Fulton* changes that analysis.

## IV.    CONCLUSION

Having reviewed Plaintiffs' Motion, the declaration attached thereto, and the remainder of the record, it is hereby ORDERED that Plaintiffs' Motion for Reconsideration, Dkt. #89, is DENIED.

Dated this 23rd day of July, 2021.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE